Argued and submitted May 29, 2007, reversed and remanded January 7, petition for review allowed April 8, 2009 (346 Or 157)

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

THOMAS PAUL MOYER,
*Defendant-Respondent.*

Multnomah County Circuit Court
040935104; A128796 (Control)

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

VANESSA COLLEEN STURGEON,
aka Vanessa Sturgeon,
aka Vanessa Colleen Kassab,
*Defendant-Respondent.*

Multnomah County Circuit Court
040935105; A128797

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

SONJA R. TUNE,
*Defendant-Respondent.*

Multnomah County Circuit Court
040935106; A128798

200 P3d 619

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. On the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General, and Erika Hadlock, Assistant Solicitor General.

Michael T. Garone and Janet Lee Hoffman argued the cause for respondents. With them on the joint brief were David Axelrod and Schwabe, Williamson & Wyatt, P.C., Nicholas Cropp and Law Offices of Janet Lee Hoffman, and Ronald Hoevet and Hoevet, Boise & Olson, P.C.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Wollheim, Schuman, Ortega, Rosenblum, and Sercombe, Judges.

LANDAU, J.

Brewer, C. J., concurring.

Schuman, J., concurring.

Sercombe, J., dissenting.

**LANDAU, J.**

Defendants were charged with violating ORS 260.402 (2003),[1] which provides, in essence, that it is unlawful to lie about the source of political campaign contributions. Defendants demurred to the indictment on the ground that the statute, on its face, violates various provisions of the state and federal constitutions, in particular, the free speech guarantees of Article I, section 8, of the Oregon Constitution and the First Amendment to the United States Constitution. The trial court allowed the demurrer on the ground that the statute violates both state and federal constitutional guarantees of freedom of expression. The state appeals, arguing that the trial court erred in concluding that the statute is unconstitutional. We agree with the state and reverse and remand.

## I. FACTS

Because this appeal comes to us on the allowance of a demurrer, the only relevant facts are those alleged in the indictment. *State v. Illig-Renn*, 341 Or 228, 230 n 2, 142 P3d 62 (2006). The first count of the indictment in this case stated:

> "The said defendants **THOMAS PAUL MOYER and VANESSA COLLEEN KASSAB**, on or about May 16, 2003, in the County of Multnomah County, State of Oregon, did unlawfully and knowing[ly] make a contribution to a candidate, in relation to his campaign for election to public office, in a name other than * * * that of the person who in truth provided the contribution, to-wit: by making a contribution of $2,500 in the name of '**VANESSA KASSAB**' to Jim Francesconi in support of his campaign for the Mayor of Portland, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon[.]"

(Boldface and uppercase in original.) The second count asserted the same charge against defendants Moyer and Tune for a $2,000 contribution in the name of "Sonja Tune."

---

[1] Unless otherwise noted, all references to ORS chapter 260 in this opinion are to the 2003 version, which is the version that applies to this case.

Defendants demurred and moved to dismiss the indictment, contending that ORS 260.402, the statute that defines the offense, is, on its face, an unlawful restraint on speech and political association and is also impermissibly vague and overbroad, all contrary to limitations on legislation contained in the state and federal constitutions. The trial court allowed the demurrer. The trial court explained that it agreed with defendants that the statute violates the state and federal guarantees of freedom of expression. According to the trial court, "political contributions are clearly speech," and the challenged statute equally clearly regulated it without the safe harbor of a historical exception to the protections afforded by constitutional free speech guarantees. The trial court disagreed with defendants that the statute is unconstitutionally vague.

On appeal, the state argues that the trial court erred in concluding that ORS 260.402 is facially unconstitutional under Article I, section 8, of the Oregon Constitution. The state also asserts that ORS 260.402 is constitutional under the First Amendment to the United States Constitution under the principles articulated in *Buckley v. Valeo*, 424 US 1, 96 S Ct 612, 46 L Ed 2d 659 (1976).

Defendants submit that ORS 260.402 violates Article I, section 8, and the First Amendment because it makes it a crime to engage in speech of a particular content—a political contribution in a false name—and because the statute cannot be narrowed to restrict only the effects of conduct not protected under either Article I, section 8, or the First Amendment. Moreover, defendants cross-assign error and contend that the statute is too vague to be enforced under either the federal or state constitution.

## II. ANALYSIS

We begin with a brief description of the challenged statute and the framework of election law of which it is an integral part. We then turn to an analysis of defendants' state constitutional claims, before turning to defendants' federal constitutional contentions. *See MacPherson v. DAS*, 340 Or 117, 125-26, 130 P3d 308 (2006) (Oregon courts analyze state constitutional challenges before turning to federal constitutional challenges).

A. *Oregon election campaign finance statutes*

ORS 260.055(1) provides that all political candidates and treasurers for political committees must "keep detailed accounts" of contributions received and expenditures made by or on behalf of the candidate or the political committee. At various points during an election cycle, the candidates and political committees are required to file statements of such contributions and expenditures with the appropriate "filing officer." *E.g.*, ORS 260.058 (statements of candidates and principal campaign committees for elections other than general elections); ORS 260.063 (statements of political committees other than principal campaign committees for elections other than general elections); ORS 260.068 (statements of candidates and principal campaign committees for general elections); ORS 260.073 (statements of political committees other than principal campaign committees for general elections); ORS 260.076 (statements of legislative officials or candidates for legislative office).

Any contribution from a person or campaign committee "that contributed an aggregate amount of more than $50" must be listed in the statement individually, along with the contributor's name, address, and occupation. ORS 260.083(1)(a). "The statement may list as a single item the total amount of other contributions, but shall specify how those contributions were obtained." *Id.*

The filing officer is required to review the statements of contributions and expenditures and notify candidates or committees who have failed to file statements as required or who have failed to file statements that comply with all statutory requirements. ORS 260.205; ORS 260.215. Failure to file a proper statement of contributions and expenditures can lead to a court order compelling such a proper filing, ORS 260.225(1); imposition of civil penalties, ORS 260.232; and removal of the candidate or measure from the ballot, ORS 260.241(2).

The filing officer is then required to preserve the filed statements and to prepare for each election a summary that is to be made available to the public. ORS 260.255(1), (2).

The summaries are required to include a list of "all expenditures that total $100 or more to any one person and a list of all contributions of more than $50." ORS 260.255(3).

■ The source of a candidate's or a committee's information about contributions is the contributor himself or herself. Obviously, the linchpin of the system of reporting contributions is the accuracy of the information reported to the candidate or committee; it is that information that provides the basis for the candidate's or the committee's statements to the filing officer. As a result, the legislature enacted what is now codified at ORS 260.402, making it a criminal offense for a person to provide false information about the source of campaign contributions to a candidate or committee. Specifically, that statute provides, in part:

> "No person shall make a contribution to any other person, relating to a nomination or election of any candidate or the support or opposition to any measure, in any name other than that of the person who in truth provides the contribution."

As defined by ORS 260.005(3)(a), "contribution" includes:

> "(A) The payment, loan, gift, forgiving of indebtedness, or furnishing without equivalent compensation or consideration, of money, services other than personal services for which no compensation is asked or given, supplies, equipment or any other thing of value:
>
> "(i) For the purpose of influencing an election for public office or an election on a measure, or of reducing the debt of a candidate for nomination or election to public office or the debt of a political committee; or
>
> "(ii) To or on behalf of a candidate, political committee or measure; and
>
> "(B) Any unfulfilled pledge, subscription, agreement or promise, whether or not legally enforceable, to make a contribution."

Thus, a violation of ORS 260.402 occurs by an actual or promised transfer of money, certain services, or things of value directly or indirectly to a political campaign "in any name other than that of the person who in truth provides the

contribution." A false name contribution could occur by a contributor using either someone else's name or someone else's money in the making of the contribution. In either event, the gravamen of the offense is the fact that the contributor is supplying *false information* to the recipient of the contribution. At issue in this case is the constitutionality of the statute that prohibits providing such false information.

B. *Article I, section 8*

1. *The analytical framework*

We begin with the question whether ORS 260.402 violates the free speech guarantee of Article I, section 8, of the Oregon Constitution. That section provides that "[n]o law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for abuse of this right." In *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982), the Supreme Court set out a framework for challenges to the constitutionality of state statutes under that provision. That framework involves first classifying the challenged statute in terms of whether it constitutes a regulation of the content of speech, as opposed to proscribing harmful effects of speech. Then, depending on the classification, the framework requires different types of analysis. *See generally State v. Johnson*, 345 Or 190, 193-94, 191 P3d 665 (2008) (most recent summary of *Robertson* analysis).

■ If the focus of the challenged statute is the content of speech itself, the statute is unconstitutional "unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach." *Robertson*, 293 Or at 412. The court cited as examples of such "historical exceptions" perjury, solicitation or verbal assistance in crime, some forms of theft, forgery and fraud, "and their contemporary variants." *Id.*

■ If a law is aimed not at the content of speech but at specific harms or proscribed effects that could be caused by speech, its constitutionality is tested by the breadth of the

law or particulars of its application; that is, we must determine whether the statute "appears to reach privileged communication or whether it can be interpreted to avoid such 'overbreadth.'" *Id.* at 418.

Although describing the framework can be accomplished without much difficulty, applying it has proved somewhat more challenging to the courts. In particular, the line between a first-category regulation (one that targets the content of speech) and a second-category regulation (one that targets only the harmful effects of speech) has proved somewhat elusive. It has been stated, for example, that, in order to qualify as a second-category regulation that focuses not on speech but on harmful effects, the "operative text" of the statute must "specify adverse effects." *City of Portland v. Tidyman*, 306 Or 174, 185-86, 759 P2d 242 (1988). On the other hand, it also has been said that, "[e]ven when the statute does not, by its terms, target a harm, a court may infer the harm from context." *Vannatta v. Keisling*, 324 Or 514, 536, 931 P2d 770 (1997); *accord State v. Stoneman*, 323 Or 536, 545-47, 920 P2d 535 (1996) (the focus of a statute on harmful effects, if not plainly stated in its text, may nevertheless be inferred from its context and apparent purpose).

In identifying the proper classification of ORS 260.402, we are greatly aided by the fact that the Oregon Supreme Court addressed, in *Vannatta*, if not that particular statute, then at least the general subject of the proper classification of laws pertaining to the regulation of election contributions. In that case, the court addressed the constitutionality of a ballot measure that, among other things, directly limited the amount of political contributions. 324 Or at 517. The court concluded that the contribution limitations violated Article I, section 8. *Id.* at 541. In arriving at that conclusion, the court first addressed whether contributions to political candidates and campaigns are a form of "expression" under the state constitution. *Id.* at 522-24. The court concluded that "*many* political contributions constitute expression." *Id.* at 523 (emphasis added). It is important to emphasize that the court did not say that *all* contributions

constitute expression.[2] Moreover (and more important to this case), the court noted that, even if a particular form of political contributions constitutes expression, it does not necessarily mean that Article I, section 8, protects it. *Id.* at 522 n 10. It depends, the court said, on the nature of the restriction—in particular, whether the restriction is *on the contribution itself*:

> "If it can be shown that financial contributions and expenditures are the free expression of opinion, laws limiting such activities run afoul of the constitutional protection. But lawmakers might choose to impose requirements distinct from contribution or expenditure limitations (*e.g., requirements of disclosure of financing sources* and the extent of any gift) as well as various sanctions (*e.g.,* civil or criminal penalties, disqualification from the ballot or Voters' Pamphlet, and the like) and their choice may not *necessarily* offend the constitutional requirement."

*Id.* at 523 (internal quotation marks omitted; first emphasis added, second emphasis in original). In other words, regulations of the contributions or expenditures themselves—limitations on their amounts, for example—are *Robertson* first-category regulations and are unconstitutional unless wholly contained within a well-established historical exception. But regulations that impose requirements "distinct from contribution or expenditure limitations," *Vannatta,* 324 Or at 523—such as disclosure requirements—are treated differently; they are *Robertson* second-category regulations, which do not necessarily offend the constitution, unless they are overbroad.

2. *Application: ORS 260.402 as a second-category statute*

■ With that in mind, we turn to the statute at issue in this case. ORS 260.402 does not limit contributions directly.

---

[2] In a footnote, the court expressly noted the limited nature of its holding:

"We qualify our statement with the limiting word, 'many,' because there doubtless are ways of supplying things of value to political campaigns or candidates that would have no expressive content or that would be in a form or from a source that the legislature otherwise would be entitled to regulate or prevent."

*Vannatta,* 324 Or at 522 n 10.

It does not specify how much may or may not be contributed. Nor does it impose any restriction on who may receive the contribution. Under ORS 260.402, *any* person can give *any* amount to *any* political campaign.

The only restriction that the statute imposes is that the person truthfully report the source of the contribution. As such, ORS 260.402 would seem to fall within the sort of reporting requirement that the Supreme Court in *Vannatta* specifically said is *not* a first-category statute, but is, instead a second-category statute that does "not *necessarily* offend" the constitution. 324 Or at 523 (emphasis in original).

At that point, the question becomes whether the statute targets harm that the legislature is entitled to target; said another way, the question is whether the statute "reaches privileged communication and, if it does so more than rarely, then whether a narrowing construction is possible to save it from overbreadth," *State v. Rangel*, 328 Or 294, 299, 977 P2d 379 (1999). In this case, the answer to that question is fairly straightforward. *Vannatta* itself stated that the legislature is entitled to enact election statutes that impose penalties for misleading the public. 324 Or at 544.

The dissent contends that we err in concluding that ORS 260.402 targets harmful effects of speech, and not speech itself. According to the dissent, the statute "is a direct prohibition on a type of speech," namely, a contribution made under a false name. 225 Or App at 104 (Sercombe, J., dissenting). Having identified the focus of the statute as certain types of contributions, the dissent easily concludes that, under *Vannatta*, it is a regulation of speech itself, that is, a *Robertson* first-category statute. The dissent, however, overlooks the fact that, as we have observed, the statute does not actually impose any limits on contributions themselves, only on the information that is reported by the contributor regarding the source of the contributions. Under *Vannatta*, that is *not* a first-category statute.

The dissent acknowledges what *Vannatta* says in that regard, but insists that we should not read the decision so broadly, because doing so puts it at odds with other cases that require the harmful effects of a statute either to be expressly stated in the wording of the statute or, at the least,

necessarily a consequence of violating the statute. In this case, the dissent contends, the violation of ORS 260.402 does not necessarily produce any particular harm because, under current law, a candidate or committee is not required to pass on to filing officials *all* reports of contributions, rather, only total aggregate contributions of more than $50 from a single person. Because no harm flows from the false reporting of the sources of such small contributions, the dissent reasons, the harm cannot fairly be said *necessarily* to flow from the violation of ORS 260.402. 225 Or App at 107-08 (Sercombe, J., dissenting).

We are not persuaded. Even assuming, for the sake of argument, that harm must *necessarily* flow from violation of the statute for it to qualify as a second-category statute, it does not logically follow that harm does not necessarily flow from every violation of ORS 260.402.

■ As we have noted, the Supreme Court has explained that whether a statute targets harmful effects of speech, as opposed to speech itself, is a question of legislative intent. *See, e.g., Stoneman*, 323 Or at 546 (citing *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993)). To ascertain legislative intent, it is always appropriate to examine prior versions of a statute, *Krieger v. Just*, 319 Or 328, 336, 876 P2d 754 (1994); prior judicial construction of the statute, *State v. Murray*, 343 Or 48, 52, 162 P3d 255 (2007); and other, related statutes, including the legislative histories of those statutes, *Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto*, 322 Or 406, 415-16, 908 P2d 300 (1995), *modified on recons*, 325 Or 46, 932 P2d 1141 (1997); *State v. Stamper*, 197 Or App 413, 420-21, 106 P3d 172, *rev den*, 339 Or 230 (2005).

What is now ORS 260.402 was enacted by the people in 1908 (later known as the Corrupt Practices Act) and prohibited—among many other things (it was an extraordinarily long initiative measure)—falsely reporting the source of a contribution and required candidates to report *all* contributions. The legislative history of that enactment shows that the people were concerned that "the secret use of money to influence elections [is] dangerous to liberty, because [it is] always used for the advantage of individuals or special

interests and classes, and never for the common good." Official Voters' Pamphlet, General Election, June 1, 1908, 103. As the Supreme Court observed in *Nickerson v. Mecklem*, 169 Or 270, 277, 126 P2d 1095 (1942), the enactment was adopted "to prevent fraud and insure purity of elections." "People," the court said, "have the right to know—and it is so contemplated by the act—who is spending money and the amount thereof * * *." *Id.* The "evil" that the statute addresses, the court summarized, is concealing the names of election campaign contributors and the amounts that they contribute. *Id.* at 282.

In other words, the harm *necessarily* occurs whenever an individual makes election campaign contributions without reporting accurately who is making the contribution. The people have the right to know *all* contributors and the amounts that they contribute. To the extent that that does not happen, there is harm.

■ The dissent gets side-tracked by the fact that the legislature later decided that some contributions are so small that it is simply not worth the effort to regulate them, regardless of the harm that results. The people and the legislature, however, are not obligated to regulate the full extent of any harm that they legitimately target. And the fact that the legislature has chosen over the years to exempt from actual reporting the receipt of aggregate contributions in small amounts—originally $5, later raised to $25 and then to $50, and most recently raised again to $100—logically does not mean that the harm in not reporting does not exist. *See* ORS 260.070(4) (1953) ($5); Or Laws 1971, ch 749, § 16 ($25); Or Laws 1995, ch 607, § 87 ($50); Or Laws 2005, ch 809, § 8 ($100).

3. *Application: ORS 260.402 as a first-category statute*

■ Even assuming, for the sake of argument, that the dissent is correct that ORS 260.402 is properly classified as a first-category statute, we are not persuaded that it necessarily follows that the statute runs afoul of the free speech guarantee of Article I, section 8. As we have noted, under *Robertson* and subsequent cases, such a statute is unconstitutional unless wholly contained within a historical exception. *Robertson*, 293 Or at 412. It bears some emphasis that

it is not required that the statute under examination match precisely, element by element, a historical exception. *Robertson* speaks of historical exceptions in terms of nineteenth-century offenses "and their contemporary variants." *Id.* By definition, there can be no such variant if the analysis requires a precise matching of elements. *Robertson* itself explains that Article I, section 8, "locks neither the powers of lawmakers nor the guarantees of civil liberties into their exact historic forms in the 18th and 19th centuries, as long as the extension remains true to the initial principle." *Id.* at 434.

An example close in point may be found in *Vannatta*, in which the Supreme Court stated that state laws that impose penalties for political candidates "who mislead the public or engage in fraud" do not violate Article I, section 8, because they would come within a historical exception for conduct constituting fraud. 324 Or at 544. It is interesting to note that the court offered the observation without engaging in an element-by-element comparison of current and historical legislation. Moreover, the court concluded that the modern statutes setting out the offenses of misleading the public and election fraud would *both* be subject to the same historical exception. That is especially noteworthy in that the statute describing the offense of misleading the public, ORS 260.532, does not appear to contain all the elements of common-law fraud.[3]

In a similar vein, in *State v. Huntley*, 82 Or App 350, 356, 728 P2d 868 (1986), *rev den*, 302 Or 594 (1987), this court concluded that ORS 260.715(1), a statute prohibiting false statements, oaths, or affidavits in elections, was subject to the historical exception for conduct constituting perjury. We did so even though the nineteenth-century exception itself was limited to falsely sworn oaths or affirmations and did not include unsworn false statements. *Id.*

With that in mind, we turn to the question whether a historical exception applies to ORS 260.402. In light of what we have just recounted regarding the *Vannatta* and *Huntley*

---

[3] Among other things, ORS 260.532(3) makes the candidate responsible for misleading campaign representations if the candidate knows of and consents to the publication of such material, followed by ORS 260.532(4), which creates a *rebuttable presumption* that the candidate has such knowledge.

decisions, it seems to follow that one or both of the historical exceptions that were mentioned in those cases apply to ORS 260.402.

First, as noted, in *Vannatta*, the Supreme Court stated that laws prohibiting candidates from making statements that mislead the public fall within the historical exception for fraud. 324 Or at 544. We can identify no reason why a law that prohibits a contributor from providing misleading information to the candidate—information that that candidate is then required to pass on to the voters—is not subject to the same exception. In either case, the prohibited act results in the public being misled during the election process.

The dissent rejects fraud as a potential historical exception because ORS 260.402 does not require that the misleading information be material, which is an element of common-law fraud. As we have mentioned above, however, the cases do not require an exact match to each and every element of a historical exception. Aside from that, the dissent never explains how the element of materiality could be satisfied in a way that the statute does not already state. The fact is that the people and the legislature have determined that providing false information is harmful to the election process.

Second, again as noted, in *Huntley*, we upheld the statute that prohibits making a "false statement, oath or affidavit" when the election laws require any statement, oath, or affidavit, ORS 260.715(1). In that particular case, the defendant was accused of supplying false information for the voters' pamphlet. 82 Or App at 352. We concluded that the statute was subject to the historical exception for conduct constituting perjury. *Id.* at 356. We did so even though the nineteenth-century perjury statutes did not apply to unsworn statements. We concluded that the form the defendant had signed—stating that the information that he had supplied was true to the best of his knowledge—was sufficient to indicate that the defendant was aware of the seriousness of the document that he was signing. *Id.* We said that, although that was not a sworn statement, it was enough to address the gravamen of the underlying historical offense. *Id.* We expressly saved for another day the question whether

even the certification that the defendant provided was required to establish the applicability of the historical exception of perjury. *Id.* at 356 n 7.

The dissent rejects perjury as an applicable historical exception in this case because there is "nothing equivalent in ORS 260.402 to the oath or affirmation that is a fundamental part of the crime of perjury." 225 Or App at 113 (Sercombe, J., dissenting). The dissent, however, overlooks the fact that there was nothing in the language of the statute that we upheld in *Huntley* that was the equivalent to an oath or affirmation either. The dissent also suggests that the statute that we upheld in *Huntley* applied only to false statements to the public, not to private persons or political committees. "Lying to a public official," the dissent reasons, "has more presumed bad effects than lying to a private person." 225 Or App at 113 n 4 (Sercombe, J., dissenting). What the dissent fails to grasp, though, is that the false information that is given to a candidate or political committee in violation of ORS 260.402 is required by law to be passed on to the filing officer and, ultimately, to the public.

In short, ORS 260.402 passes muster as a *Robertson* second-category statute that is not unconstitutionally overbroad. In the alternative, if it is a *Robertson* first-category statute, it nevertheless is wholly contained within a well-established historical exception. In either case, the trial court erred in ruling that ORS 260.402 violates Article I, section 8, of the Oregon Constitution.

D. *First Amendment*

■ The First Amendment to the United States Constitution provides, in part, that "Congress shall make no law * * * abridging the freedom of speech, or of the press." The amendment has been held to apply to the states through the Due Process Clause of the Fourteenth Amendment. *New York Times Co. v. Sullivan*, 376 US 254, 264 n 4, 84 S Ct 710, 11 L Ed 2d 686 (1964).

In *Buckley*, 424 US 1, the United States Supreme Court concluded that a statutory requirement that campaign contributors disclose their identities does not violate the

First Amendment. The Court explained that "[t]he burden imposed by [disclosure] is no prior restraint, but a reasonable and minimally restrictive method of furthering First Amendment values by opening the basic processes of our federal election system to public view." *Id.* at 82.

If a law that requires disclosure of a contributor's identity does not offend First Amendment guarantees, we do not understand how a law that merely requires that such disclosures be truthful does. We conclude that the trial court also erred in ruling that ORS 260.402 violates the First Amendment.

## C. *Defendants' cross-assignment: Vagueness*

■ Finally, defendants contend that, if the trial court erred in concluding that ORS 260.402 violates the free speech guarantees of the state and federal constitutions, we nevertheless should affirm the judgment allowing defendants' demurrer because the court erred in rejecting their argument that the statute is unconstitutionally vague. According to defendants, the statute offers "no discernible standard of conduct at all" in that it prohibits contributions "relating to" a nomination or election of a candidate in a name other than that of the person who "in truth provides" the contribution. Neither term, defendants complain, is capable of meaningful definition and application. The state insists that the statute is sufficiently precise and that the trial court did not err in rejecting defendants' vagueness challenge.

We agree with the state that the trial court did not err in that regard. As we explained in *State v. Krueger*, 208 Or App 166, 170-71, 144 P3d 1007 (2006) (quoting *Illig-Renn*, 341 Or at 239-40),

> "to say that a law is unconstitutionally 'vague' can refer to any of three different problems. First, a statute may be so vaguely crafted as to permit arbitrary or unequal application and uncontrolled discretion, in violation of Article I, sections 20 and 21, of the Oregon Constitution. Second, a statute may create an 'unlawful delegation issue' under the Due Process Clause of the Fourteenth Amendment in that it contains no identifiable standards or employs standards

that rely on the 'shifting and subjective judgments of the persons who are charged with enforcing it.' Third, a statute may be so poorly written as to fail to provide 'fair warning' of the conduct that it prohibits, in violation of the Due Process Clause."

(Citations omitted.) Defendants contend that ORS 260.402 is flawed in each of those respects, although they do not explain precisely why that is so, beyond complaining that the two phrases that we have quoted are "lacking in specificity."

■■ ■■ "[A]bsolute precision," however, "is not required to overcome a facial vagueness challenge." *Illig-Renn*, 341 Or at 243. As the Supreme Court explained in *State v. Graves*, 299 Or 189, 195, 700 P2d 244 (1985), "[a] criminal statute need not define an offense with such precision that a person in every case can determine in advance that a specific conduct will be within the statute's reach." What is required is "a reasonable degree of certainty." *Id.*

In our view, neither of the two phrases about which defendants complain is unconstitutionally vague in any of the three senses that are prohibited. To begin with, our task is not to examine the challenged words or phrases in a vacuum. While it may be the case that, for example, a definition of "truth" as an abstract proposition can be difficult to articulate, it does not necessarily follow that, when viewed in the context of the statute at issue, its meaning is not fairly straightforward. Moreover, when examined as a whole, the statute does not call for the sort of subjective assessments that can lead to arbitrary or discriminatory application. Nor does it deprive anyone of fair notice of the conduct that is prohibited.

We reject defendants' vagueness challenge without further discussion. The trial court did not err in rejecting defendants' constitutional challenge to ORS 260.402 on that ground. As we have explained, however, the trial court did err in concluding that the statute violates state and federal constitutional guarantees of freedom of expression.

Reversed and remanded.

Haselton and Ortega, JJ., join in this opinion.

**BREWER, C. J.,** concurring.

I agree with the majority that ORS 260.402 focuses on the harmful effects of speech, not speech itself. Therefore, I concur in the result that the majority reaches.

I disagree, however, that the statute is wholly contained within a historical exception to the guarantee of Article I, section 8, of the Oregon Constitution. My quarrel is not with the majority's able effort to apply the historical exception prong of the *State v. Robertson*, 293 Or 402, 694 P2d 649 (1982), methodology. Suffice it to say that, in my view, a more practical and predictable basis for determining the scope of the constitutional guarantee lies in the distinction between speech and its effects, rather than in reliance on the sometimes debatable and obscure remnants that a limited historical record may yield concerning possible exceptions that do not comport with the constitutional text.

Accordingly, I respectfully concur.

Edmonds, J., joins in this concurrence.

**SCHUMAN, J.,** concurring.

Accepting, as I must, that a campaign contribution is a form of expression that is protected by Article I, section 8, of the Oregon Constitution, *Vannatta v. Keisling*, 324 Or 514, 524, 931 P2d 770 (1997), I agree with the dissent that ORS 260.402 (2003) is a law that prohibits expression *per se* and not a law that focuses on harm that is caused by expression. The statute prohibits a specified type of expression: falsely attributed campaign contributions. Although the statute itself specifies no harm that it is intended to prevent, the purpose of the statute is presumably to prevent members of the public from being deceived about the source of the contribution. Thus, as the lead opinion contends, "the harm *necessarily* occurs whenever an individual makes election campaign contributions without reporting accurately who is making the contribution." 225 Or App at 93 (emphasis in original). Further, it is a kind of harm—being deceived—that can be achieved *only* through expression, that is, through one person's communication of some sort of falsehood to another person.

As the Supreme Court made clear in *State v. Robertson*, 293 Or 402, 412, 649 P2d 569 (1982), statutes that impose criminal sanctions for deception that can be accomplished only through speech are presumptively unconstitutional, unless, like statutes punishing perjury, fraud, and forgery, they fall within some well-established historical exception to free speech guarantees. I therefore agree with the dissent that ORS 260.402 (2003) is what has come to be known as a "*Robertson* category I" statute.

I concur with the lead opinion, however, because I agree that the statute is a "contemporary variant[ ]," *Robertson*, 293 Or at 412, of a historical exception to free speech guarantees.

**SERCOMBE, J.,** dissenting.

I do not differ with the lead opinion in identifying the principles to be applied to determine the constitutionality of ORS 260.402 (2003)[1] under Article I, section 8, of the Oregon Constitution. Those principles were identified in *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982), and *Vannatta v. Keisling*, 324 Or 514, 931 P2d 770 (1997). Where I differ with the lead opinion is in the classification of the law under the principles enunciated in those cases.

The lead opinion infers a material and harmful effect from every violation of the statute—an infringement of the people's "right to know" the source of all political contributions. That inference is the foundation of the lead opinion's classification of ORS 260.402 under *Robertson* as a law regulating only the effects of speech. It is also the crux of the lead opinion's reasoning that ORS 260.402 is the progeny of the common-law crimes of perjury and fraud, crimes that require proof of material harm in order to obtain conviction.

I disagree with the lead opinion's reasoning in three respects. First, I do not believe that ORS 260.402 is a law that regulates only on the basis of the effects of speech. The undesired effects are not stated in the law itself or in the statutory context of the law. Because ORS 260.402 regulates the

---

[1] Unless otherwise noted, references to ORS 260.402 in this opinion are to the 2003 version of that statute.

speech act itself, the "mak[ing of] a contribution," rather than the effects of that speech, the statute is unconstitutional under *Robertson* unless the law fits within a well-established historical exception to the application of Article I, section 8. Second, even assuming that a more lenient constitutional test exists under *Robertson* to sustain a regulation of speech when the communication necessarily produces harm, ORS 260.402 does not qualify under that test. ORS 260.402 can be violated by conduct that does not produce any harmful effect. Finally, ORS 260.402 has nothing in common with any traditional crime that punishes untrue speech other than a common subject of false utterances. It does not fit within any well-established historical exception to the application of Article I, section 8.

I conclude that the statute restricts a communicative act (the making of a political contribution), without regard to any necessary effect of that act (as affecting voter behavior, the election process, or the content of public disclosures), and in an unprecedented fashion (because any historic regulation of untrue speech requires that the untruth be material and the deceit to be intentional). In light of those conclusions, I believe that ORS 260.402 is unconstitutional under Article I, section 8. I respectfully dissent from the lead opinion's conclusions to the contrary.

## I. CLASSIFICATION OF ORS 260.402 UNDER *ROBERTSON*

The constitutionality of ORS 260.402 under Article I, section 8, is tested by the framework adopted by the Supreme Court in *Robertson*. In that case, the court recognized a distinction between laws that criminalize speech based on its content and laws that regulate undesired effects of speech. Under *Robertson*, the first category of legislation regulated by Article I, section 8, consists of laws that restrain or restrict the content of speech in ways that were not historically established and intended to be allowed to continue after adoption of the Oregon Constitution. The *Robertson* court held:

"Article I, section 8, for instance, forbids lawmakers to pass any law 'restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any

subject whatever,' beyond providing a remedy for any person injured by the 'abuse' of this right. This forecloses the enactment of any law written in terms directed to the substance of any 'opinion' or any 'subject' of communication, unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach. Examples are perjury, solicitation or verbal assistance in crime, some forms of theft, forgery and fraud and their contemporary variants. *See* Greenawalt, *Speech and Crime,* 1980 Am B Found Res J 645, 648-70. Only if a law passes that test is it open to a narrowing construction to avoid 'overbreadth' or to scrutiny of its application to particular facts."

293 Or at 412 (footnote omitted).

If a law is aimed not at the content of speech but at specific harms or proscribed effects that could be caused by speech, its constitutionality is tested by the breadth of the law or particulars of its application. *Robertson* describes a second category of laws as those that expressly prohibit expression used to achieve forbidden effects:

"When the proscribed means include speech or writing, however, even a law written to focus on a forbidden effect * * * must be scrutinized to determine whether it appears to reach privileged communication or whether it can be interpreted to avoid such 'overbreadth.' "

*Id.* at 417-18.

Thus, the meaning and effect of ORS 260.402 must be examined in order to categorize the statute under *Robertson. See State v. Ausmus,* 336 Or 493, 499, 85 P3d 864 (2003); *Leppanen v. Lane Transit District,* 181 Or App 136, 143, 45 P3d 501 (2002) (construing statutes before reaching facial constitutionality issues). The meaning of a statute, *i.e.,* the legislative intent in its enactment, is discerned from the statute's text and context, and then from the record of its adoption if the meaning remains unclear. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 859 P2d 1143 (1993). The text and context of ORS 260.402 suggest a plain meaning of the statute.

ORS 260.402 provided, in part:

"No person shall make a *contribution to any other person*, relating to a nomination or election of any candidate or the support or opposition to any measure, in any name other than that of the person who in truth provides the contribution."

As defined by ORS 260.005(3)(a), "contribution" includes:

"(A) The payment, loan, gift, forgiving of indebtedness, or furnishing without equivalent compensation or consideration, of money, services other than personal services for which no compensation is asked or given, supplies, equipment or any other thing of value:

"(i) For the purpose of influencing an election for public office or an election on a measure, or of reducing the debt of a candidate for nomination or election to public office or the debt of a political committee; or

"(ii) To or on behalf of a candidate, political committee or measure; and

"(B) Any unfulfilled pledge, subscription, agreement or promise, whether or not legally enforceable, to make a contribution."

Thus, a violation of ORS 260.402 occurs by an actual or promised transfer of money, certain services, or things of value directly or indirectly to a political campaign "in any name other than that of the person who in truth provides the contribution." A false name contribution could occur by a contributor using either someone else's name or money in the making of a contribution. In either event, the act that is regulated is the "mak[ing of] a contribution * * * relating to a nomination or election of any candidate or the support or opposition to any measure." Some acts of "mak[ing] a contribution" are unlawful under ORS 260.402; others are not.

It is settled that the contribution of money to a political candidate or committee—the act at issue in this case—is part of the "free expression of opinion" or the "right to speak [or] write * * * freely on any subject whatever" that is protected by Article I, section 8. In *Vannatta*, 324 Or at 524, the Supreme Court held that "both campaign contributions and expenditures are forms of expression for the purposes of

Article I, section 8." At issue in *Vannatta* was the legality of campaign finance restrictions in an initiated statute (Measure 9), that directly limited the amount of money that could be contributed to a political campaign. The court reasoned:

> "However, the contribution, in and of itself, is *the contributor's expression of support for the candidate or cause*—an act of expression that is completed by the act of giving and that depends in no way on the ultimate use to which the contribution is put."

*Id.* at 522 (emphasis in original).

The court determined that the restriction on the amount of political contributions was "written in terms directed to the substance of any 'opinion' or any 'subject' of communication" under *Robertson*. 324 Or at 536. Similarly, the court concluded that other limitations on the making of campaign contributions were category one laws under *Robertson*. For example, section 4 of the measure provided that a candidate or campaign committee "shall not make a contribution" to other candidates or committees. Section 16 inhibited corporations and labor organizations from "mak[ing] a contribution" to a candidate or political committee. The court determined that "the contribution provisions in Measure 9 are targeted at the content of speech, *i.e.*, political support for a candidate, and thereby fall under the first level of Article I, section 8, scrutiny." *Vannatta*, 324 Or at 537. The court observed:

> "All the listed provisions of Measure 9 either expressly limit, or ban outright, campaign contributions that may be given to or that may be accepted by a candidate. By their terms, those provisions are targeted at protected speech."

*Id.* at 537-38.

For the same reasons, I would hold that ORS 260.402 is a direct prohibition on a type of speech and that its legality is tested by the *Robertson* standards for category one laws. The conduct that is made unlawful by ORS 260.402 is based on what the speaker says ("mak[ing] a contribution") and not on any particular effect of that speech. "Contribution" is defined, in part, as furnishing money or services

"[f]or the purpose of influencing an election." ORS 260.005(3)(a)(A)(i). The statute restricts "mak[ing] a contribution" in a false name by attaching criminal penalties to that conduct. ORS 260.993(2) (violation of ORS 260.402 as Class C felony). That effect inhibits a person from expressing political support for a candidate or measure by contributing money to that candidate or measure using someone else's money. Even if the implied source of the money is false, the contribution is nonetheless an expression of political support by the person making the contribution. ORS 260.402 directly restricts that expression of political support.

The lead opinion categorizes ORS 260.402 differently. It cites two observations by the *Vannatta* court as material to the analysis in this case. Because *Vannatta* notes that "*many* political contributions constitute expression," the lead opinion reasons that "[i]t is important to emphasize that the court did not say that *all* contributions constitute expression." 225 Or App at 89 (emphasis in original). ORS 260.402, however, is not restricted by its terms to applying only to contributions that do not express political support. Indeed, the contribution at issue in this case—the payment of money to a political candidate—is an expression of political support.

The lead opinion then observes that *Vannatta* distinguishes between laws limiting financial contributions and expenditures and laws that "impose requirements distinct from contribution or expenditure limitations (*e.g.*, requirements of disclosure of financing sources and the extent of any gift)" that "may not necessarily offend" Article I, section 8. *Vannatta*, 324 Or at 523. The lead opinion concludes that ORS 260.402 "does not limit contributions directly" but is a mere "reporting requirement," a disclosure law that does not restrict expressive conduct. 225 Or App at 90-91. It labels ORS 260.402 as a second-category *Robertson* law in light of that classification.

ORS 260.402 is not a disclosure law in that sense. The statute does not provide that, if you make a contribution using someone else's money, you must disclose the name of the owner of the money. It provides that you cannot make a contribution using someone else's money—period. The statute restricts the act of contribution. If a person writes a check

to a political committee, using funds given to that person for that purpose by someone else, ORS 260.402 is violated when the check is conveyed. The contribution is "in [the] name other than that of the person who in truth provides the contribution." Even if that person later discloses the identity of the source of the money, the contribution itself is false and a violation of ORS 260.402. The statute does not require the maker of the check to separately verify the source of the funds or to attest to anything. The constitutionality of such a disclosure law is not before the court.

Instead, ORS 260.402 prohibits "mak[ing] a contribution" using another person's money or name. In prohibiting the making of those two types of political contributions, ORS 260.402 targets the content of speech, an insincere expression of political support for a candidate or measure. Therefore, the statute is properly classified as a *Robertson* category-one law.

## II. CLASSIFICATION OF ORS 260.402 BY ITS NECESSARY EFFECTS

In *State v. Stoneman*, 323 Or 536, 920 P2d 535 (1996), the Supreme Court recognized that a restraint on speech could be a second-category law under *Robertson* if the "actual focus of the enactment" is on a proscribed harm or effect. *Id.* at 543. The statute at issue in *Stoneman*, ORS 163.680 (1987), made it unlawful to pay or give anything of value to observe or view reproductions of sexually explicit conduct by a child known by the person to be under 18 years of age. The court held that the statute prohibited the purchase of communicative materials "not in terms of their communicative *substance*, but in terms of their status as the products of acts that necessarily have harmed the child participants," harm that was defined under child abuse criminal statutes that were contextually related to ORS 163.680. *Id.* at 548. Because that harm was identified in contextually related laws, and because the harm "necessarily" resulted from every violation of ORS 163.680, the court found the statute to be a second-category law, one written to focus on a forbidden effect. As noted by the lead opinion, *City of Portland v. Tidyman*, 306 Or 174, 185-86, 759 P2d 242 (1988), requires

that in order to qualify as a second-category law, the "operative text" of the statute must "specify the adverse effects." The tension between *Stoneman* and *Tidyman* suggests that, at the very least, the *Stoneman* analysis should be confined to regulated communications that necessarily offend a related law.

The lead opinion concludes that *Stoneman* supports categorization of ORS 260.402 as a second-category law. It reasons that loss of a person's "right to know" the source of campaign contributions necessarily results from making contributions in a false name and that this necessary effect should be inferred from the operation of the statute in the context of other campaign financing laws. I do not believe that unsatisfied curiosity is sufficiently identified as a harm in any statute related to ORS 260.402. As noted in *Vannatta*, "it is not sufficient to select a phenomenon and label it as a 'harm.'" 324 Or at 539. Rather, "the 'harm' that legislation aims to avoid must be identifiable from legislation itself, not from social debate and competing studies * * *." *Id.* The text of contribution and expenditure reporting laws identified by the lead opinion does not expressly create any enforceable rights or identify any particular harm. Instead, the lead opinion creates a "right to know" from the purposes of the 1908 Corrupt Practices Act that were identified in *Nickerson v. Mecklem*, 169 Or 270, 277, 126 P2d 1095 (1942) ("People have the right to know—and it is so contemplated by the act—who is spending money and the amount thereof * * *."). I believe that any harmful effects engrafted to a law under a *Stoneman* analysis must be clearly and expressly identified in a related law. The lead opinion does not identify any such related law to ORS 260.402.

Moreover, any "right to know" created by the contribution and expenditure reporting laws is necessarily limited to the disclosures required by those laws. At the time of the alleged offenses in this case, ORS 260.083(1)(a)(A) required public reporting by candidates and committees of elections of the identity of donors of aggregated contributions in excess of $50. Other contributions are aggregated and reported as a single item in the contribution and expenditure report.[2]

_____

[2] Under ORS 260.057, political committees and candidates must file with the Secretary of State statements of contributions received and expenditures made by

Thus, there was no "right to know" the identity of contributors of smaller amounts. ORS 260.402 nonetheless punished false contributions of those lesser amounts. Because every violation of ORS 260.402 does not necessarily result in a loss of "right to know," the statute does not regulate on the basis of that forbidden effect. Put another way, a violation of the statute can occur even when any inferred harm does not. That fact alone defeats any argument that the statute regulates effects.

### III. HISTORICAL EXCEPTIONS ANALYSIS

I do not agree that ORS 260.402 fits wholly within any historical exception "that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach." *Robertson,* 293 Or at 412; *see State v. Moyle,* 299 Or 691, 695, 705 P2d 740 (1985) (describing the historical exception as a crime that was "well established at the time our constitutional guarantee was enacted and demonstrably outside the aims of the guarantee of freedom of expression"). The examples given in *Robertson* were "perjury, solicitation or verbal assistance in crime, some forms of theft, forgery and fraud and their contemporary variants." *Robertson,* 293 Or at 412. The crimes listed in *Robertson* are all crimes where false or misleading speech is a core element of the crime—as laws "restricting the right to speak, write, or print freely on any subject whatever." Those laws would be invalid under Article I, section 8, but for the fact that those crimes were within a historical exception. Thus, the state is incorrect in arguing that, because ORS 260.402 affects only false speech, it falls outside the limitations of Article I, section 8.

A speech regulation may be a permissible "contemporary variant," in the words of *Robertson,* of a historical exception to the constitutional limitations on laws directed to

---

the candidate and political committee. ORS 260.083(1)(a) required those statements to include the "name, occupation and address of each person * * * that contributed an aggregate amount of more than $50 on behalf of a candidate or to a political committee and the total amount contributed by that person or political committee" as well as the "total amount of other contributions as a single item, but shall specify how those contributions were obtained." The $50 benchmark was raised to $100 in 2007. Or Laws 2005, ch 809.

the substance of communication. I agree with the lead opinion's contention that *Robertson*'s historical exception analysis does not require that "the statute under examination match precisely, element by element, a historical exception." 225 Or App at 94. However, the spirit and intent of the statute that is considered the "variant" must at the very least embody that of the earlier version. For the reasons that follow, I believe that ORS 260.402 does not fit nicely into any historical exception.

As a matter of specific predicate, there was no well-established regulation of political campaign contributions at the time of the enactments of the federal and state constitutions. In *Vannatta*, the Supreme Court found that, "[a]t the time of statehood and the adoption of Article I, section 8, there was no established tradition of enacting laws to limit campaign contributions." 324 Or at 538. As noted above, Oregon voters initiated and then adopted the state's first campaign finance law, the Corrupt Practices Act, at the June 1908 election. Or Laws 1909, ch 3. At the time of the adoption of the Oregon Constitution in 1859, then, the regulation of campaign contributions and political campaigns was a half century away.

Similarly, federal regulation of campaign financing dates from 1907 with the passage of the Tilman Act. Act of Jan 26, 1907, ch 420, 34 Stat 864. The Tilman Act banned corporate contributions to campaigns for federal offices. Federal prohibitions on contributions in the name of another occurred in the 1971 Federal Election Campaign Act, 2 USC section 441f. *See* Robert D. Probasco, *Prosecuting Conduit Campaign Contributions—Hard Time for Soft Money*, 42 S Tex L Rev 841, 846 (2001). Thus, neither the regulation of political campaign contributions in general, nor the preclusion of untruthful campaign contributions in particular, were established prior to the adoption of the free speech guarantees.

Therefore, to survive Article I, section 8, ORS 260.402 must fit within, or be a contemporary variant of, a traditional speech crime. At common law, the mere making of an untrue statement was not punished. Although lying was

considered morally circumspect, Blackstone distinguished it from criminal liability:

> "The vice of lying, which consists (abstractedly taken) in a criminal violation of truth and therefore in any shape derogatory from sound morality, is not however taken notice of by our law, unless it causes with it some public inconvenience * * *."

William Blackstone, *Commentaries* at 16 (Vol 4, ch 4). That "public inconvenience" was the production of a material and harmful effect by the lie. The creation of that effect is part of the crimes of fraud and perjury that the lead opinion pegs as the antecedents of ORS 260.402. The prohibition on making a campaign contribution in a false name does not require that effect.

The traditional elements of common-law fraud required: (1) a false representation of material fact; (2) known to be false; (3) made with the intent to induce the recipient to act or refrain from acting; (4) where the recipient justifiably relied on the representation; and (5) the recipient was damaged by that reliance. *Pollock v. D. R. Horton, Inc. - Portland*, 190 Or App 1, 20, 77 P3d 1120 (2003). "[F]raud is one of the conventional speech crimes that can be regulated even if the law focuses on the speech itself." *State v. Porter*, 198 Or App 274, 278, 108 P3d 107 (2005) (citing *Robertson*, 293 Or at 412). In *Porter*, the court considered the constitutionality of an identity theft statute, ORS 165.800, criminalizing deception or fraud. The court analyzed ORS 165.800 "only to the extent that it purport[ed] to criminalize creating or uttering the identification of another with the intent to deceive." *Id.* The inquiry was whether the law focused on speech *per se*. In concluding that the identity theft statute did not focus on speech *per se*, but rather on an attempt to cause a forbidden harm (deceit), we reasoned:

> "At first blush, the identity theft statute appears to be of that type because it 'makes the speaking of the words themselves criminal, if spoken with the requisite intent, even if no harm [is] caused or threatened.' *Spencer*, 289 Or at 229. Closer scrutiny, however, yields a different conclusion. The harm that the statute targets is deception. A person who either creates or utters the identification of another and who *intends* that act to deceive has taken a substantial step

toward accomplishing the deception; the person, in other words, has *attempted* to achieve harm."

*Id.* at 279 (emphasis in original).

A violation of ORS 260.402 requires neither intentional conduct nor actual deception. As noted above, a false contribution above $50, for example, could result in a false reporting of that contribution in a contribution and expenditure report under ORS 260.083(1)(a)(A), a report that is filed as a public record. Requiring that kind of ill effect as a consequence of a false contribution might better align ORS 260.402(1) with traditional fraud. But ORS 260.402 requires no intended or obtained effect or materiality of the false speech and therefore it does not fit within the fraud exception.

The lead opinion suggests that ORS 260.402 qualifies as a contemporary variant of the perjury exception. Perjury, a sworn falsification, was a crime at common law, defined as a person willfully and corruptly giving false testimony on a material point in a judicial proceeding under oath. *See* Charles E. Torchia, 4 *Wharton's Criminal Law* § 574 (15th ed 1993). *See* General Laws of Oregon, Crim Code, ch XLVI, § 598, p 549 (Deady 1845-1864) (crime of perjury and subordination of perjury).[3] An analogous crime at common law was that of "false swearing," similar to perjury in that it required an oath and had to be material. However, false swearing differed from perjury "in that the false oath in perjury may relate only to testimony given in a judicial proceeding, whereas the false oath in false swearing may relate not only to testimony but also to a statement, and it may be given not merely in a judicial proceeding but in any proceeding or matter in which an oath is required or authorized by law." Torchia, 4 *Wharton's Criminal Law* § 579 (footnote omitted). Both false swearing and perjury required materiality, meaning that the statement had to be capable of affecting the

---

[3] Blackstone notes:

"The perjury must also be willful, positive, and absolute; not upon surprise, or the like: it also must be in some point material to the question in dispute; for if it only be in some trifling circumstances, to which no regard is paid, it is no more penal than in the voluntary extra-judicial oaths before-mentioned."

William Blackstone, *Commentaries* at 16 (Vol 4, ch 10).

"course or outcome" of the proceeding. *Id.* at § 591. Both crimes required the falsehood to be made in a governmental proceeding or to a public official, where an oath is required by law.

In *State v. Huntley*, 82 Or App 350, 728 P2d 868 (1986), *rev den*, 302 Or 594 (1987), we upheld ORS 260.715(1), a statute that punished the certification of false statements in the voters' pamphlet, as constitutional under Article I, section 8. We found the law to be a contemporary variant of perjury, and the certification to be analogous to the purpose "served by oaths and affidavits: to impress upon the speaker the gravity of the occasion and the necessity for truth-telling." *Id.* at 356. Thus, we held that,

> "[w]hen a statement, required by the election laws, is certified as true by the signator, criminal prosecution and conviction for furnishing false information is a contemporary variant of perjury and is not beyond constitutional limits.[7]
>
> ———
> "[7] We are not asked to decide whether an uncertified statement could be the subject of a constitutional limitation, and we offer no opinion on that issue."

*Id.* The lead opinion would expand the logic of *Huntley* and the perjury exception to campaign contributions made under a false name. 225 Or App at 94. The statute upheld in *Huntley* prohibited criminalized statements that "[a]lthough it is not a sworn statement, it is one certified as true." *Huntley*, 82 Or App at 356. The statute in this case, ORS 260.402, does not contain any requirement that there be an oath, affirmation, certification, or verification of truthfulness in any respect, making it neither analogous nor a contemporary variant to perjury.

Thus, there is a significant difference between ORS 260.402 and ORS 260.715(1), a law pertaining to false certifications in an election, that undercuts the perjury analogy for ORS 260.402. ORS 260.402 does not require the identity of the contributor to be certified, *i.e.*, to be attested as true by the person making the contribution. There is nothing equivalent in ORS 260.402 to the oath or affirmation that is a fundamental part of the crime of perjury or the certification in

*Huntley* that is the contemporary variant of an oath or affidavit. We recognized in *Huntley* that limitations on an uncertified statement posed a different question. I disagree with the lead opinion and would conclude that ORS 260.402 is not the progeny of the historic crimes of perjury or false swearing.[4]

ORS 260.402 is not an outgrowth, then, of traditional crimes involving untrue speech. The conduct that is the subject of ORS 260.402 lacks the required undesired effects of fraud and perjury, requirements that are core to the definitions of those crimes. Instead, ORS 260.402 directly proscribes false speech without regard to the materiality of the speech, the intended effect of the speech, or any official context of the speech. I am not prepared to say, as the lead opinion suggests, that the punishment of any false speech is constitutionally appropriate under Article I, section 8, because *some* types of untrue speech were proscribed historically. Instead, the common-law crimes involving untrue speech all require another quality to distinguish the lie from ordinary dissemblance—that the lie produce undesired consequences to private persons or entities or in governmental records or processes.[5] ORS 260.402, by its terms as well as its

---

[4] ORS 260.402 may be distinguishable from perjury for a second reason. The statute regulates false statements to private persons or political committees, unlike ORS 260.715(1) that relates to false statements to election officials and the crimes of perjury or false swearing to public officials. The proscribed false name contribution is a communication to a candidate or to backers of a measure. It is not a communication to an election official or to the voters. As noted earlier, only some political contributions are reported to the public in campaign finance reports. Lying to a public official, as is the case for perjury and false swearing, has more presumed bad effects than lying to a private person and the historic regulation of both types of falsehoods differ. The lead opinion contends that ORS 260.402(1) is the functional equivalent of a communication to an election official or the voters because the identity of the contributor "is required by law to be passed on to the filing officer and, ultimately, to the public." 225 Or App at 96. As noted earlier, aggregated contributions under $50 are not reported to the Secretary of State under ORS 160.083(1)(a)(A) and some contributions are not reported to the voters because they are not disclosed until after the election. Thus, not all communications proscribed by ORS 260.402 are conveyed to the state or the public.

[5] The statutes cited by the lead opinion, and noted in *Vannatta*, as contemporary variants of fraud qualify the untrue speech in this same way. 324 Or at 544. ORS 260.532(1) criminalizes some false publications relating to a candidate or measure, requiring that the publication be done "with knowledge or with reckless disregard that [the publication] contains a false statement *of material fact* relating to any candidate, political committee or measure." (Emphasis added.) ORS 260.355 permits a court to deprive a person of a nomination or election to public office for a "deliberate and material" violation of an election law.

necessary operation, regulates some speech without this quality. ORS 260.402 is unconstitutional under Article I, section 8, because it is a law directed to the substance of the communicative aspect of political contributions that has no well-established antecedent existing before the adoption of the Oregon Constitution. I dissent from the contrary conclusion reached by the lead opinion.

Armstrong, Wollheim, and Rosenblum, JJ., join in this dissent.