Argued and submitted September 18, 2009, decision of Court of Appeals affirmed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings April 29, 2010

STATE OF OREGON,
*Respondent on Review,*

*v.*

THOMAS PAUL MOYER,
*Petitioner on Review.*

(CC 0409-35104; CA A128796 (Control))

STATE OF OREGON,
*Respondent on Review,*

*v.*

VANESSA COLLEEN STURGEON,
aka Vanessa Sturgeon,
aka Vanessa Colleen Kassab,
*Petitioner on Review.*

(CC 0409-35105; CA A128797)

STATE OF OREGON,
*Respondent on Review,*

*v.*

SONJA R. TUNE,
*Petitioner on Review.*

(CC 0409-35106; CA A128798)

(SC S056990)

230 P3d 7

Ronald H. Hoevet, Hoevet, Boise & Olson P.C., Portland, argued the cause for petitioner on review Vanessa Colleen Sturgeon. With him on the joint briefs were Michael T. Garone and David Axelrod, Schwabe, Williamson & Wyatt, P.C., Portland; and Janet Lee Hoffman and Shannon Riordan, Hoffman Angeli, LLP, Portland.

Erika L. Hadlock, Deputy Solicitor General, Salem, argued the cause for respondent on review. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Linda K. Williams and Daniel W. Meek, Portland, filed a brief on behalf of *amici curiae* Policy Initiatives Group, Joan Horton, Ken Lewis, Bryn Hazel, Francis Nelson, Tom Civiletti, David Delk, and Gary Duell.

Thomas M. Christ, Portland, filed a brief on behalf of *amicus curiae* ACLU Foundation of Oregon, Inc.

DE MUNIZ, C. J.

**DE MUNIZ, C. J.**

Defendants are charged with violating ORS 260.402 (2003),[1] which provided, in part, that "[n]o person shall make a contribution to any other person, relating to a nomination or election of any candidate or the support or opposition to any measure, in any name other than that of the person who in truth provides the contribution." Defendants demurred to the indictment on the ground that the statute, on its face, violates the free expression clauses of Article I, section 8, of the Oregon Constitution and the First Amendment to the United States Constitution. The trial court agreed with defendants and sustained the demurrer. The state appealed, and the Court of Appeals reversed. *State v. Moyer*, 225 Or App 81, 200 P3d 619 (2009). We allowed defendants' petition for review and, for the reasons that follow, affirm the decision of the Court of Appeals.

■ Because the trial court sustained defendants' demurrer, the only relevant facts on review are those alleged in the indictment. *State v. Illig-Renn*, 341 Or 228, 230 n 2, 142 P3d 62 (2006). The first count of the indictment states:

> "The said defendants **THOMAS PAUL MOYER and VANESSA COLLEEN KASSAB**, on or about May 16, 2003, in the County of Multnomah County, State of Oregon, did unlawfully and knowing[ly] make a contribution to a candidate, in relation to his campaign for election to public office, in a name other than * * * that of the person who in truth provided the contribution, to-wit: by making a contribution of $2,500 in the name of '**VANESSA KASSAB**' to Jim Francesconi in support of his campaign for the Mayor of

---

[1] ORS 260.402 (2003) provided:

"No person shall make a contribution to any other person, relating to a nomination or election of any candidate or the support or opposition to any measure, in any name other than that of the person who in truth provides the contribution. No person shall knowingly receive the contribution or enter or cause it to be entered in accounts or records in another name than that of the person by whom it was actually provided. However, if the contribution is received from the treasurer of any political committee, it shall be sufficient to enter it as received from the treasurer."

The statute has been amended since defendants were charged in this case. However, the wording changes in the current statute are not material to the issues in this case. Unless otherwise noted, all references to ORS chapter 260 in this opinion are to the 2003 version, which is the version that applies to this case.

Portland, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon[.]"

(Boldface and uppercase in original.) The second count asserted the same charge against defendants Moyer and Tune, based on a $2,000 contribution in the name of "Sonja Tune." Defendants demurred to the indictment, contending that ORS 260.402 unlawfully restrains expression and political association and also is impermissibly vague and overbroad. Although the trial court rejected the claim that the statute is unconstitutionally vague, it sustained defendants' demurrer, agreeing with defendants that the statute impermissibly restrains expression in violation of state and federal constitutional free speech guarantees.

The state appealed, and defendants cross-assigned error, asserting that the trial court erred when it concluded that the statute was not unconstitutionally vague. As noted above, the Court of Appeals reversed, issuing a plurality opinion, two concurring opinions, and a dissenting opinion. The plurality applied the methodology for analyzing free expression challenges under Article I, section 8, set out in *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982). The plurality first concluded that, because the only restriction ORS 260.402 imposes is that a person must truthfully report the source of a campaign contribution, the statute is aimed at a forbidden effect of the unlawful expression, not the content of expression, and therefore must be analyzed under the second *Robertson* category. *Moyer*, 225 Or App at 91-93. According to the plurality, the legislature is entitled to enact election statutes that impose penalties for misleading the public, and the statute is not overbroad; therefore, the statute does not violate Article I, section 8. *Id.* As an alternative holding, the plurality analyzed the statute under the first *Robertson* category, assuming that ORS 260.402 is a restraint on the content of expression. *Id.* at 93. Under that *Robertson* category, the plurality concluded that the statute did not violate the free expression guarantee in Article I, section 8, because it came within a historical exception for fraud or perjury.[2] *Id.* at 95.

___

[2] There were two concurring opinions. Chief Judge Brewer and Judge Edmonds agreed that ORS 260.402 was a *Robertson* category-two law, because it focused on harmful effects and not on speech. *Moyer*, 225 Or App at 99 (Brewer, C. J., concurring). Judge Schuman, however, concluded that ORS 260.402 prohibits

With regard to defendants' First Amendment argument, the plurality relied on *Buckley v. Valeo*, 424 US 1, 96 S Ct 612, 46 L Ed 2d 659 (1976), in which the United States Supreme Court held that a statutory requirement that campaign contributors disclose their identities does not violate the First Amendment. *Moyer*, 225 Or App at 96-97. The plurality reasoned that, under *Buckley*, a statutory requirement that such a disclosure be truthful similarly did not violate the First Amendment. *Id.*

Finally, the plurality rejected defendants' argument that the statute is unconstitutionally vague, concluding that the statute does not permit arbitrary or unequal application, is not an unlawful delegation of too much discretion to law enforcement, and provides fair warning of the conduct it prohibits. *Id.* at 97-98.

The dissent rejected the plurality's Article I, section 8, analysis. The dissent concluded that ORS 260.402 regulates the content of expression, because the statute regulates "the making of a contribution." *Id.* at 106 (Sercombe, J., dissenting). The dissent further concluded that ORS 260.402 does not fit within any historical exception and therefore violates Article I, section 8, of the Oregon Constitution. *Id.* at 108-13 (Sercombe, J., dissenting).

On review, defendants assert that, because the statute does not specify the forbidden effects to which it is directed, and because the presumed forbidden effects are not identified in any related statute and are not elements of the offense, the Court of Appeals mistakenly categorized ORS 260.402 as a *Robertson* second-category statute. Instead, defendants argue that, because the statute regulates campaign contributions, the statute directly restrains free expression and therefore is a *Robertson* first-category statute. According to defendants, the statute also violates Article I, section 8, because it is not wholly confined to any historical exception to Oregon's free expression guarantee. Defendants also reassert their claim that the statute similarly violates the free speech guarantee of the First Amendment.

expression but concurred with the conclusion in the lead opinion that the statute is a contemporary variant of a historical exception to free expression guarantees. 225 Or App at 99-100 (Schuman, J., concurring).

To provide a complete understanding of the meaning and effect of ORS 260.402, we begin with an examination of its text and statutory context. The statute was originally passed by voter initiative and became effective in 1908 as part of the Corrupt Practices Act (Oregon Laws 1909, chapter 3), an initiative to limit candidates' election expenses and to define, prevent, and punish corrupt and illegal practices in nominations and elections. At that time, the statute provided:

> "No person shall make a payment of his own money or of another person's money to any other person in connection with a nomination or election in any other name than that of the person who in truth supplies such money; nor shall any person knowingly receive such payment or enter or cause the same to be entered in his accounts or records in another name than that of the person by whom it was actually furnished; *provided*, if the money be received from the treasurer of any political organization it shall be sufficient to enter the same as received from said treasurer."

(Emphasis in original.) The Corrupt Practices Act required candidates to report all contributions, and was intended to maintain the "purity" of the ballot and to prohibit illegal practices in elections, whether a measure or a candidate was involved. *Nickerson v. Mecklem*, 169 Or 270, 277, 126 P2d 1095 (1942). In an argument in support of the Act, the People's Power League of Oregon stated that, among other things,

> "the secret use of money to influence elections [is] dangerous to liberty, because [it is] always used for the advantage of individuals or special interests and classes, and never for the common good. * * * The primary purpose of this bill is, as nearly as possible, to prevent the use of any means but arguments addressed to the voter's reason in the nominations and elections of Oregon."

Official Voters' Pamphlet, General Election, June 1, 1908, 103. Since then, the Corrupt Practices Act has required public disclosure of campaign contributions and has prohibited false name contributions like those alleged to be at issue here. *See, e.g.*, Oregon Code, title XXXVI, ch XXIV, § 36-2418 (1930) ("No person shall make a payment of his own money or of another person's money to any other person in connection

with a nomination or election in any name other than that of the person who in truth supplies such money * * *.").

Currently, ORS 260.402 is a part of ORS chapter 260, which addresses campaign finance regulation, reporting requirements, election offenses, and enforcement. ORS 260.055(1) provides that all political candidates and treasurers for political committees must "keep detailed accounts" of contributions received and expenditures made by or on behalf of the candidate or the political committee. At various points during an election cycle, the candidates and political committees are required to file statements of their contributions and expenditures with the appropriate "filing officer." ORS 260.058; ORS 260.063; ORS 260.068; ORS 260.073; ORS 260.076; ORS 260.083. Any contribution from a person or campaign committee that "contributed an aggregate amount of more than $50" must be listed in the statement individually, along with the contributor's name, address, and occupation. ORS 260.083(1)(a).[3] "The statement may list as a single item the total amount of other contributions, but shall specify how those contributions were obtained." *Id.*

The filing officer is required to review the statements of contributions and expenditures and notify candidates or committees who have failed to file statements or whose statements fail to comply with all statutory requirements. ORS 260.205; ORS 260.215. Failure to file a proper statement of contributions and expenditures can lead to a court order compelling a proper filing, ORS 260.225(1); to the imposition of civil penalties, ORS 260.232; or even to the removal of a candidate or measure from the ballot, ORS 260.241(2).

The filing officer is also required to preserve the filed statements and may be required to prepare before each election a summary of the filed statements, which is to be made available to the public. ORS 260.255(1), (2). Those summaries must list "all contributions of more than $50." ORS 260.255(3).

---

[3] The statute was amended in 2007 and now provides similar requirements for contributors in "an aggregate amount of more than $100."

■ As noted, ORS 260.402 (2003) provided, in part, that "[n]o person shall make a contribution to any other person, relating to a nomination or election of any candidate or the support or opposition to any measure, in any name other than that of a person who in truth provides the contribution."

As defined by ORS 260.005(3)(a), "contribution" includes:

"(A) The payment, loan, gift, forgiving of indebtedness, or furnishing without equivalent compensation or consideration, of money, services other than personal services for which no compensation is asked or given, supplies, equipment or any other thing of value:

"(i) For the purpose of influencing an election for public office or an election on a measure, or of reducing the debt of a candidate for nomination or election to public office or the debt of a political committee; or

"(ii) To or on behalf of a candidate, political committee or measure; and

"(B) Any unfulfilled pledge, subscription, agreement or promise, whether or not legally enforceable, to make a contribution."

Thus, the text and context of ORS 260.402 make it clear that the statute prohibits an actual or promised transfer of money, certain services, or things of value, either to a political campaign or for purposes of influencing an election for public office or an election on a measure, "in any name other than that of the person who in truth provides the contribution." As noted, according to defendants, that statutory prohibition impermissibly restrains expression in violation of Article I, section 8. We turn to that claim.

Article I, section 8, of the Oregon Constitution, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

In *State v. Plowman*, 314 Or 157, 163-64, 838 P2d 558 (1992), *cert den*, 508 US 974 (1993), the court summarized the framework established in *Robertson* to analyze free

expression challenges under Article I, section 8. First, laws that are directed to the *substance* of any opinion or any subject of communication violate Article I, section 8,

> " 'unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach.' "

*Plowman*, 314 Or at 164 (quoting *Robertson*, 293 Or at 412). Second, laws that focus on proscribing the pursuit or accomplishment of forbidden *results* are divided further into two categories: (a) laws that focus on forbidden effects, but expressly prohibit expression used to achieve those effects, which are analyzed for overbreadth; and (b) laws that focus on forbidden effect, but do not refer to expression at all, which are analyzed for vagueness or for as-applied unconstitutionality. *Plowman*, 314 Or at 164.

Our first task, then, is to determine whether the statute is "written in terms directed to the substance of any 'opinion' or any 'subject' of communication." *Robertson*, 293 Or at 412. As noted, ORS 260.402 is violated by an actual or promised transfer of money, services, or thing of value, directly or indirectly to a political campaign, "in any name other than that of the person who in truth provides the contribution."

As the Court of Appeals plurality observed in this case, describing the *Robertson* framework is not difficult; however, determining "the line between a [*Robertson*] first-category regulation (one that targets the content of speech) and a [*Robertson*] second-category regulation (one that targets only the harmful effects of speech) has proved somewhat elusive." 225 Or App at 89. The debate over whether ORS 260.402 is a *Robertson* category-one statute because it restricts campaign contributions—the dissenting view—or whether the statute is a *Robertson* category-two statute because it focuses on a forbidden effect but prohibits expression used to achieve that effect—the plurality view—was one of the issues (in addition to the disagreement over the applicability of a historical exception) that splintered the Court of Appeals.

Much of the debate in the Court of Appeals appears to have been prompted by conflicting signals from this court in at least two respects. First, the parties and the judges of the Court of Appeals disagreed about the meaning, effect, and application of certain statements by this court in *Vannatta v. Keisling*, 324 Or 514, 523, 921 P2d 770 (1997) (*Vannatta I*). We acknowledge that this court's various statements in *Vannatta I* to the effect that campaign contributions are constitutionally protected forms of expression by the political contributors could be understood to mean that, in every instance, the delivery to a candidate or campaign of a contribution is constitutionally protected expression. However, we recently clarified those statements in *Vannatta v. Oregon Government Ethics Comm.*, 347 Or 449, 465, 222 P3d 1077 (2009) (*Vannatta II*). In *Vannatta II* we pointed out that, *Vannatta I* had "assumed a symbiotic relationship between the making of contributions and the candidate's or campaign's ability to communicate a political message," for purposes of that case, however, the court had not decided that, "in every case, the delivery to a public official, a candidate, or a campaign of money or something of value also is constitutionally protected expression as a matter of law." 347 Or at 465.

Second, the Court of Appeals plurality noted this court's statement in *City of Portland v. Tidyman*, 306 Or 174, 185-86, 759 P2d 242 (1988), that, to qualify as a *Robertson* category-two statute—a statute that focuses not on speech but on harmful effects—the operative text must "specify adverse effects" targeted by the legislature. *Moyer*, 225 Or App at 89. However, in *Vannatta I*, this court commented that, "[e]ven when the statute does not, by its terms, target a harm, a court may infer the harm from context." 324 Or at 536. That statement in *Vannatta I* was based on this court's analysis of the statute at issue in *State v. Stoneman*, 323 Or 536, 545-47, 920 P2d 535 (1996). In *Stoneman*, this court stated that, in determining the nature of the harmful effect targeted by a statute, the statute cannot be read in a vacuum: "An examination of the *context* of a statute, as well as of its wording, is necessary to an understanding of the policy that the legislative choice embodies." *Id.* at 546 (emphasis in original). Consistently with this court's statement in *Tidyman*,

the court's contextual analysis in *Stoneman* established that the statute at issue in that case "prohibited the purchase of certain communicative materials, not in terms of their communicative *substance*, but in terms of their status *as the products of acts that necessarily have harmed the child participants*." 323 Or at 548 (first emphasis in original; second emphasis added). In our view, *Stoneman* correctly states that a statute should not be read in isolation, and that the legislature's policy choice (the harm that is the target of the criminal prohibition) in some cases may be determined not only from the statute's text, but also from its context. That said, we now analyze ORS 260.402 under the *Robertson* methodology.

As noted, defendants are charged with "knowing[ly]" violating the part of ORS 260.402 that states that "[n]o person shall make a contribution to any other person, * * * in any name other than that of the person who in truth provides the contribution." In *Vannatta I*, this court observed that not every law related to the regulation of political campaign contributions and expenditures runs afoul of Article I, section 8:

> "[L]awmakers [may] choose to impose requirements distinct from contribution or expenditure limitations (e.g., requirements of disclosure of financing sources and the extent of any gift) as well as various sanctions (e.g., civil or criminal penalties, disqualification from the ballot or Voters' Pamphlet, and the like) and their choice may not *necessarily* offend the constitutional requirement."

*Vannatta I*, 324 Or at 523 (first emphasis added; second emphasis in original). On its face, ORS 260.402 seems more akin to the kind of statutes described in *Vannatta I* that do not offend the Article I, section 8, expression guarantee. The statute imposes no restriction on what any person may say, whether contributor, campaign agent, or candidate. Moreover, as we explained in *Vannatta II*, defendants' argument that the delivery of gifts, money, or services is expression in every case is incorrect.

*Robertson* makes it clear, however, that statutes that impose criminal sanctions for deception that can be

accomplished only through expression violate Article I, section 8, unless they fall within some well-established historical exception to free expression guarantees. *Id.*, 293 Or at 412 (listing examples such as "perjury, solicitation or verbal assistance in crime, some forms of theft, forgery and fraud and their contemporary variants"). Here, ORS 260.402 prohibits communicating a name to the recipient of the contribution when that name is not the name of "the person who in truth provides the contribution." In other words, the falsity that the statute prohibits can only be achieved through expression—through one person's communication of a falsehood to another person. It is for that reason that the statute must be classified as a *Robertson* category one law.[4] As a result, ORS 260.402 violates Article I, section 8, unless the statute falls within a historical exception as described in *Robertson*. We turn to that question.

■      In *Robertson*, this court recognized that historical exceptions to Article I, section 8, were not restricted solely to the actual statutes or the common law in place when the Oregon Constitution was adopted. Instead, the court recognized that successive legislatures would continue to revise crimes and other laws and create new crimes and laws in the light of societal changes and needs:

> "The legislature, of course, may revise these crimes and extend their principles to contemporary circumstances or sensibilities. If it was unlawful to defraud people by crude face-to-face lies, for instance, free speech allows the legislature some leeway to extend the fraud principle to sophisticated lies communicated by contemporary means. *Constitutional interpretation of broad clauses locks neither the powers of lawmakers nor the guarantees of civil liberties into*

---

[4] The Court of Appeals plurality concluded that the statute is directed, not at the expression itself, but at the harmful effects of expression (concealing from the recipient and the public the true identity of a contributor). The difficulty, however, is that, although the statute is directed against concealing the identity of a contributor, the law is violated whether or not the recipient of the contribution or the public actually is misled about the identity of the contributor. In other words, the statute is violated when the contribution is made, whether or not any harmful effect occurs. Because the targeted effects are not expressed in the statute, and because, unlike the statute at issue in *Stoneman*, the targeted harm need not occur to violate the statute, the statute cannot be classified under the *Robertson* methodology as a category-two law.

*their exact historic forms in the 18th and 19th centuries, as long as the extension remains true to the initial principle."*

*Robertson*, 293 Or at 433-34 (emphasis added).

█        Whether a statute that restrains expression is "wholly confined within some historical exception" requires the following inquiries: (1) was the restriction well established when the early American guarantees of freedom of expression were adopted, and (2) was Article I, section 8, intended to eliminate that restriction. *State v. Henry*, 302 Or 510, 515-25, 732 P2d 9 (1987).

As with the question whether the statute is a *Robertson* category-one or category-two law, the parties and the Court of Appeals disagree whether ORS 260.402 qualifies as a contemporary variant of some well-recognized restriction on expression at the time that Article I, section 8, was adopted. In that regard, the state takes the position that ORS 260.402 is a contemporary variant of the historical prohibition against fraud, forgery, and perjury involving false communication that preceded the adoption of Article I, section 8. Although defendants agree that such restrictions were in place before the adoption of the Oregon Constitution, they contend that ORS 260.402 cannot be considered a modern variant of common-law fraud, because it "contains none of the traditional elements of fraud."[5] According to defendants, unlike common-law fraud, ORS 260.402 does not require that a representation be made in connection with the contribution; the statute does not contain an intent-to-deceive element; the statute is not limited to material misrepresentations; and the statute does not require reasonable reliance or injury in fact.[6] We are not persuaded. For the following reasons, we conclude that ORS 260.402 falls within a historical exception to Article I, section 8.

---

[5] Defendants also argue that the statute is not a modern variant of perjury, false swearing, or forgery achieved through false communication. Because we conclude that ORS 260.402 is a modern variant of fraud and therefore is within a historical exception, we need not address defendants' arguments regarding perjury, false swearing, or forgery.

[6] According to defendants, proof of fraud requires a showing that (1) the accused falsely represented a material fact; (2) the accused knew the representation was false; (3) the representation was made with the intent to induce the recipient to act or refrain from acting; (4) the recipient justifiably relied on the misrepresentation; and (5) the recipient was damaged by that reliance.

First, in his *Commentaries on the Laws of England*, William Blackstone recognized that misrepresentations that contributed to "public inconvenience" were actionable offenses. In the volume entitled "Of Public Wrongs," Blackstone wrote:

> "The vice of lying, which consists (abstractedly taken) in a criminal violation of truth, and therefore in any shape is derogatory from sound morality, is not however taken notice of by our law, *unless it carries with it some public inconvenience, as spreading false news*; or some social injury, as slander and malicious prosecution, for which a private recompense is given."

William Blackstone, 4 *Commentaries on the Laws of England* *41-42 (1769) (emphasis added). At that time, the "public inconvenience" associated with misrepresenting one's identity in court or before a public official was considered grievous and was classified as a felony under English law. In his section on offenses against public justice, Blackstone noted:

> "Likewise by statute 21 Jac. I. c. 26 to acknowledge any fine, recovery, deed enrolled, statute, recognizance, bail, or judgment, in the name of another person not privy to the same, is felony without benefit of clergy. Which law extends only to proceedings in the courts themselves: but by statute 4 W. & M. c. 4 *to personate any other person [before any] commissioner authorized to take bail in the country, is also felony. For no man's property would be safe, if records might be suppressed or falsified, or persons' names be falsely usurped in courts, or before their public officers.*"

Blackstone, 4 *Commentaries* at *127 (emphasis added). Given Blackstone's observations that providing false identifying information to governmental officials or public bodies were sanctionable offenses, it is unlikely that the framers of the United States Constitution or the Oregon Constitution considered that kind of false communication a form of constitutionally protected expression.

In Oregon, misrepresentations made with intent to injure or defraud, somewhat like those described by Blackstone, were statutorily prohibited as criminal acts as early as 1864, only five years after the adoption of the Oregon Constitution in 1859. That early statute covered a variety of

misrepresentations, including those aimed at defrauding individuals and the "body politic."[7] *See General Laws of Oregon*, Crim Code, ch LIII, § 727, pp 577-78 (Deady 1845-1864) (so stating). The 1864 statute provided:

"If any person shall, with intent to injure or defraud any one, falsely make, alter, forge or counterfeit any public record whatever, or any certificate, return or attestation of any clerk, notary public or other public officer, in relation to any matter wherein such certificate, return or attestation may be received as legal evidence, or any note, certificate or other evidence of debt issued by any officer of this state, or any county, town or other municipal or public corporation therein, authorized to issue the same, or any contract, charter, letters patent, deed, lease, bill of sale, will, testament, bond, writing obligatory, undertaking, letter of attorney, policy of insurance, bill of lading, bill of exchange, promissory note, evidence of debt, or any acceptance of a bill of exchange, endorsement or assignment of a promissory note, or any warrant, order or check, or money, or other property, or any receipt for money or other property, or an acquittance or discharge for money or other property, or any plat, draft or survey of land, or shall, with such intent, *knowingly utter or publish as true and genuine, any such false, altered, forged or counterfeited record, writing, instrument or matter whatever*, such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary, not less than two, nor more than twenty years."

---

[7] Although the term "defraud" was undefined within the 1864 statute, lawyers of the day would have understood that a variety of meanings could be attached to the term. A contemporaneous legal dictionary of the period, defining "fraud" and "to defraud" together in the same passage, provided, among other meanings:

"4. Frauds may be also divided into actual or positive and constructive frauds.

"5. An *actual or positive fraud* is the intention and successful employment of any cunning, deception, or artifice, used to circumvent, cheat, or deceive another. * * *

"6. By *constructive fraud* is meant such a contract or act, which, though not originating in any actual evil design or contrivance to perpetrate a positive fraud or injury upon other persons, yet by its tendency to deceive or mislead them, or to violate private or public confidence, or to impair or injure the public interests, is deemed equally reprehensible with positive fraud, and therefore, is prohibited by law, as within the same reason and mischief as contracts and acts done *malo animo*."

John Bouvier, 1 *Law Dictionary* 547 (9th ed 1860) (emphasis in original; internal citations omitted).

*General Laws of Oregon*, Crim Code, ch XLV, § 584, pp 545-46 (Deady 1845-1864) (emphasis added).

The 1864 statute prohibiting various forms of false communication, consistent with Blackstone's observations, is a further demonstration of the unlikelihood that the framers of the Oregon Constitution—many of whom were serving in the legislature when the 1864 statute was enacted—considered false communication in connection with public records and matters of legitimate governmental concern to be protected by Article I, section 8's guarantee of the free expression of opinion.[8]

Second, this court previously has upheld campaign laws providing sanctions and penalties for political candidates who mislead the public or engage in fraud. *Vannatta I*, 324 Or at 544. In *Vannatta I*, this court upheld, as within a historical exception, a provision of a ballot measure providing that, when a candidate reneges on a promise not to exceed a specified amount of campaign expenditures, the Secretary of State is required to publish in the Voters' Pamphlet a bold-print notice that the candidate failed to abide by his or her promise. The court described a candidate who reneges on his or her promise as one who "has misled the electorate" and stated that "[l]aws that are targeted at fraud do not violate Article I, section 8, because they constitute a historical exception to Article I, section 8." *Id.*

Despite this court's observation in *Vannatta I*, defendants argue strenuously that, because ORS 260.402 does not contain an intent-to-deceive element, the statute cannot be considered a modern variant of common-law fraud. We have two responses. First, we note that here the indictment alleges that defendants "knowing[ly]" made "a contribution to a candidate * * * in a name other than * * * that of the person who in truth provided the contribution." Necessarily, then, the state will be required to prove at trial that defendants acted with an awareness that their conduct was of a "nature so described or that a circumstance so described exists." *See*

---

[8] A cursory review of the Oregon Revised Statutes reveals at least 150 statutes that impose sanctions and punishments for various forms of false communication. In particular, many of those statutes involve the communication of identifying information in one form or another to governmental entities.

ORS 161.085(8) ("knowingly" or "with knowledge," when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists).[9]

Second, this court already has held that a statute that prohibits fraud on the electorate need not include an intent element to come within a historical exception. *Vannatta I* upheld the constitutionality of a provision requiring the public identification of candidates who broke expenditure-cap promises, even though that provision did not require that the deceit have been intentional:

> "The fact that a candidate may have intended to abide by expenditure limitations when he or she made the pledge, and only later decided to ignore that promise, does not make the failure to abide by the promise any less a fraud on the voters who have relied on the candidate's Voters' Pamphlet statement to choose their candidate."

324 Or at 544 n 28.

In our view, there is no important difference between statutes requiring the public identification of candidates who violate expenditure-cap pledges, statutes prohibiting candidates from making material misstatements during campaigns, and the statutory requirement in ORS 260.402 that the identification of political contributors be truthful. As our cases establish, the elements of a modern statute need not be identical or matched perfectly with historical prohibitions to fall within a historical exception. Prohibiting the concealment of the identity of the true provider of a political contribution from either the recipient of the contribution, the public, or both, is, we conclude, an extension or modern variant of the initial principle that underlies the historic legal prohibition against deceptive or misleading expression. Thus, in our view, ORS 260.402 falls within a "historical exception," whether the exception is described as one related to misleading the electorate, as identified in

---

[9] Whether it would be permissible under Article I, section 8, to punish a contributor for inadvertently making a contribution in the name of another person is a question not presented in this case.

*Vannatta I*, or simply is described as a contemporary variant of the exception for common-law fraud. Because the restriction on making a contribution using another person's name in ORS 260.402 falls within a historical exception, the statute does not violate Article I, section 8, of the Oregon Constitution.

■ We turn to defendants' other arguments. Defendants assert that the statute violates the First Amendment to the United States Constitution because it is overbroad, in that it criminalizes contributions made in another's name without requiring the *intent* to deceive.

As we noted in *Vannatta I*, 324 Or at 521, the United States Supreme Court takes a different approach to expression challenges under the First Amendment than this court does with regard to expression challenges under Article I, section 8. In *Buckley v. Valeo*, the United States Supreme Court determined that political expenditures and contributions were forms of expression under the First Amendment, but also concluded that contributions were less central to core First Amendment expression, and therefore could be subject to governmental restriction through a balancing-of-interests analysis. 424 US at 28-29. The court in *Buckley* concluded that contributions are a less-protected form of expression than are expenditures, based on two assumptions about contributions: (1) although contributions may result in speech, that speech is by the candidate and not by the contributor; and (2) contributions express only general support for a candidate and do not communicate the reasons for that support. *Buckley*, 424 US at 21. Relying on those assumptions, the Supreme Court concluded that a statutory requirement that campaign contributors disclose their identities did not violate the First Amendment, because the disclosure requirement was narrowly limited to those situations in which the information sought had a substantial connection with the governmental interests to be advanced; that is, "disclosure helps voters to define more of the candidates' constituencies." *Id.* at 81. The Court explained that "[t]he burden imposed by [disclosure] is no prior restraint, but a reasonable and minimally restrictive method of furthering First Amendment values by opening the basic processes of our federal election system to

public view." *Id.* at 82. *See also Citizens United v. Federal Election Commission,* ____ US ____ , 130 S Ct 876 (2010) (campaign expenditure disclosure and disclaimer require- ments do not unconstitutionally restrain speech; such require- ments provide the electorate with information and insure that the voters are fully informed as to who is speaking). A law that forbids making a contribution using another per- son's name is not, in our view, more burdensome than a law like the one at issue in *Buckley*, requiring disclosure of the identity of the contributor in the first instance. We therefore conclude that ORS 260.402 does not violate the First Amendment.[10]

■      Finally, we turn to defendants' contention that ORS 260.402 is unconstitutionally vague under Article I, sections 20 and 21, of the Oregon Constitution and the First and Fourteenth Amendments to the United States Constitution. Defendants argue that the statute provides insufficient notice of the criminalized conduct, delegates too much discre- tion to law enforcement, and has a chilling effect on protected speech.

---

[10] Defendants also argue that the statute is overbroad, because it criminalizes speech that would not deceive the electorate. Defendants observe that ORS 260.402 criminalizes all contributions made in another person's name, regardless of the dollar amount contributed. Defendants assert, however, that ORS 260.083 does not require statements of contributions and expenditures to report the iden- tity of contributors who contribute less than a specific dollar amount ($50 in 2003). Therefore, defendants contend, ORS 260.402 criminalizes some speech that could not deceive the public—contributing $50 or less under a false identity—because the false identity would never be disclosed to the public.

Defendants' reasoning misses an important point, however. The $50 limit in ORS 260.083 is not the amount of a single contribution—it is the total dollar amount contributed by a particular individual. ORS 260.083 required the state- ment of contributions and expenditures to "list the name, occupation and address of each person * * * that contributed *an aggregate amount* of more than $50." (Emphasis added.) By making the disclosure of the contributor's identity turn on the aggregate amount contributed, the statute prohibits contributors from conceal- ing their identity by breaking contributions into amounts of $50 or less.

One cannot determine whether a contributor's aggregate contributions exceed $50 without knowing the identities of all contributors, including those who contrib- uted $50 or less. To comply with ORS 260.083, then, the party required to file the statement of contributions and expenditures must know the true identities of all contributors, whether or not their individual contributions exceed $50. Thus, a false representation as to the identity of a contributor—regardless of the amount of the contribution—deceives the filing party and interferes with the proper opera- tion of ORS 260.083.

Regarding a vagueness challenge under the Oregon Constitution, this court stated in *State v. Graves*, 299 Or 189, 195, 700 P2d 244 (1985), that:

"[A] criminal statute must not be so vague as to permit a judge or jury to exercise uncontrolled discretion in punishing defendants, because this offends the principle against *ex post facto* laws embodied in Article I, section 21, of the Oregon Constitution. The equal privileges and immunities clause is also implicated when vague laws give unbridled discretion to judges and jurors to decide what is prohibited in a given case, for this results in the unequal application of criminal laws. A criminal statute need not define an offense with such precision that a person in every case can determine in advance that a specific conduct will be within the statute's reach. However, a reasonable degree of certainty is required by Article I, sections 20 and 21."

(Internal citations and footnote omitted.)

This court has also stated that "absolute precision is not required to overcome a facial vagueness challenge." *Illig-Renn*, 341 Or at 243. Here, defendants assert that the statutory phrases "relating to" and "in truth provides" are not adequately defined by common usage or context. Defendants argue that, as a result, the statute could reach any donation that "eventually serves to benefit a measure or campaign." According to defendants, the words "relating to" are so broad that the statute criminalizes a person's decision to pick up the dinner tab when the person and his or her friends "decide if they should encourage a person to run for a local office." We disagree with defendants. The phrase "relating to" must be read in the context of the entire statute. For the convenience of the reader, we again set out the text of ORS 260.402, which provided, in part:

"No person shall make a contribution to any other person, relating to a nomination or election of any candidate or the support or opposition to any measure, in any name other than that of the person who in truth provides the contribution."

"Contribution" is defined by ORS 260.005(3), which we quoted earlier. (Exceptions to the definition of "contribution" are set out in ORS 260.007.) The phrase "relating to"

thus ties "contribution" to only transfers made "[f]or the purpose of influencing an election for public office or an election on a measure, or of reducing the debt of a candidate for nomination or election to public office or the debt of a political committee," or payments made "[t]o or on behalf of a candidate, political committee or measure[.]" ORS 260.005(3)(a)(A)(i), (ii). In addition, by using the present-tense phrase "relating to," the legislature established that the contribution must relate to a candidate or measure at the time it is made. *See Martin v. City of Albany*, 320 Or 175, 181, 880 P2d 926 (1994) ("[t]he use of a particular verb tense in a statute can be a significant indicator of the legislature's intention"). Thus, contributions "relating to" a candidate or measure are those that are made to the candidate or to the campaign supporting a measure, or for the purpose of influencing an election.

Defendants also challenged the phrase "in truth provides" as vague. Again, we disagree. ORS 260.402 provides that a person who makes a contribution "in any name other than that of the person who in truth provides the contribution" violates the statute. Because the statute applies only to contributions made *in* the name of a specific person, the statute applies only when money has been contributed "in" someone's "name"—that is, when the contribution is attributed to a specific person.[11] When read as a whole, the statute provides adequate notice of what conduct is proscribed, and thus is not impermissibly vague in violation the Oregon Constitution.

---

[11] Because ORS 260.402 applies only to those contributions that are made in someone's name, it does not criminalize anonymous contributions. However, ORS 260.083 requires that committees disclose the names and addresses of all individuals and entities that contribute more than the threshold reporting amount. Accordingly, the Secretary of State's administrative rules require campaigns to refuse or to disgorge contributions for which campaigns cannot provide that information—those funds that are donated anonymously. *See 2010 Campaign Finance Manual* at 29 ("No committee shall accept an anonymous contribution. If a committee cannot identify a contributor, the contribution must be donated to an organization that can accept anonymous contributions."); OAR 165-012-0005 (designating *Campaign Finance Manual* and associated forms "as the procedures and guidelines to be used for compliance with Oregon campaign finance regulations"). This case does not involve anonymous contributions, and we do not address whether Article I, section 8, would prevent the legislature from prohibiting anonymous campaign contributions.

In assessing a claim that a criminal statute fails to give fair warning under the United States Constitution, we adhere to the standard that federal courts have applied to criminal and quasi-criminal statutes—whether the statute would " 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly.' " *Illig-Renn*, 341 Or at 241 (quoting *Grayned v. City of Rockford*, 408 US 104, 108, 92 S Ct 2294, 33 L Ed 2d 222 (1972)). As we explained above, when read as a whole, the statute provides adequate notice of what conduct is proscribed. Accordingly, we conclude that ORS 260.402 gave adequate notice that it is unlawful to make a contribution using another person's name. Therefore, we reject defendants' vagueness challenge.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.