DeVORE, J.
*849 Defendant appeals a judgment of conviction for unlawful delivery of methamphetamine, ORS 475.890. He assigns error to the trial court's denial of his motion for a judgment of acquittal, arguing that the evidence of the quantity and packaging of the drug was insufficient to support a delivery conviction. We affirm.
We state the facts in the light most favorable to the state when reviewing a denial of a motion for a judgment of acquittal. State v. Kaylor , 252 Or. App. 688, 690, 289 P.3d 290 (2012), rev. den. , 353 Or. 428, 299 P.3d 889 (2013). We determine whether "a rational trier of fact could have found that the state proved all the essential elements of the offense beyond a reasonable doubt." Id . at 691, 289 P.3d 290.
Police suspected that defendant was driving with a suspended license. When he failed to signal as required for a turn, officers initiated a traffic stop. Before police made contact, a witness saw defendant throw a sunglasses case from his car into a parking lot. Sometime after the traffic stop, a witness gave police the sunglasses case. It contained two syringes, cotton swabs, and 9.84 grams of methamphetamine separated into seven baggies. Defendant was charged with possession of methamphetamine, ORS 475.894, and unlawful delivery of methamphetamine, ORS 475.890.
*529 Three police officers involved in defendant's arrest testified at trial, providing context for the amount and packaging of the methamphetamine found. They testified that the methamphetamine was "prepackaged" into seven baggies or "bindles." Five of the seven bindles contained a similar quantity, each within 0.2 grams of another: 1.83 grams, 1.76 grams, 1.87 grams, 1.80 grams, and 1.78 grams. Each was described as a "teener," generally understood as one-sixteenth of an ounce or 1.75 grams. Two bindles contained methamphetamine consistent with a "50-sack" quantity, generally understood as 0.5 grams: One contained 0.44 grams, and the other contained 0.36 grams. In addition, one empty or unused baggie was found without evidence of any drug.
Captain Mitts, the Director of the South Coast Interagency Narcotics Team (SCINT), testified that he *850 trained in drug enforcement with the Drug Enforcement Administration (DEA) and the Oregon Narcotics Enforcement Association. He had handled 200 individual drug cases himself and participated in over 1,000 drug investigations during his 22-year career. He said that the quantity of an "individual use" of methamphetamine can range from 0.10 to 0.5 grams, but 0.25 to 0.5 grams is the most common individual use.
Speaking generally, Mitts testified that "[u]sers do not have ten grams on their person." He said that it is not typical for drug users to buy in bulk. That requires more cash, and users often lack gainful employment. He said that the nearly 10 grams that defendant possessed would "absolutely" be a "large number of individual uses." He said that "nine times out of ten," individual users, who are buying for themselves, are going to get one bag, such as a "teener or below." Based on his training and experience, Mitts concluded that the "overall quantity" of 9.84 grams of methamphetamine and "the way that it was individually packaged in particular" was consistent with delivery, not personal use.
Deputy Clayburn had been with SCINT at the time of defendant's arrest. He had trained with the DEA and investigated dozens of drug cases. He testified that a drug user who "used a lot" could go through a "teener" (1.75 grams) in a day. In his experience, Clayburn said that typical users "might have like, one little baggie" with "a couple granules of methamphetamine in it." Because defendant had seven prepackaged baggies-five of which contained "teener" amounts and two of which contained "50-sack" amounts-Clayburn believed they were for sale.
Sergeant Moore had served with SCINT 10 years and investigated hundreds of drug cases in his 22 years in law enforcement. He had classes and field experience in identifying whether a quantity of drugs is a "user quantity" or a "delivery quantity." He testified that, as indications of delivery, he looks for scales, packaging material, tally sheets, or "drugs that are already prepackaged into smaller quantities." Sometimes the packaging process takes place at the scene where drugs are sold. Other times, the drugs will *851 be preweighed at home, where the process is secure, rather than in a vehicle, which is usually too public.[1]
Moore testified that the prepackaged bindles contained specific quantities that are commonly sold to buyers. In the case of methamphetamine, a "typical user" generally purchases a "teener" or a "50-sack." Based on his training and experience, Moore concluded that the 9.84 grams of methamphetamine, which was packaged into seven smaller commonly sold quantities, was consistent with delivery, not personal use.
At the close of the state's case, defendant moved for a judgment of acquittal on the delivery count, arguing that the quantity of drugs found in his possession and the way the drugs were packaged was not sufficient to infer an intent to deliver under the prevailing case law. The state countered that the evidence was sufficient to permit a reasonable jury to find an intent to deliver beyond a reasonable doubt and that the prevailing case law supported its position. The trial court denied defendant's motion, concluding that the evidence was sufficient such that a reasonable *530 jury could infer an intent to deliver. The jury found defendant guilty as charged.
On appeal, the parties renew their arguments. Defendant argues that the quantity and the packaging of the methamphetamine do not support an inference of an intent to deliver in this case. Defendant contends that "because the state ha[s] no other evidence that defendant intended to deliver the drugs"-such as cell phone messages, any drug records, scales, packaging materials, or cash-"the evidence was insufficient to support a conviction for delivery." At oral argument, defendant characterized the evidence as merely seven "user amounts," akin to a beer drinker's six-pack.
The state disputes defendant's minimalization of the number of uses as the equivalent of a six-pack. The state argues that evidence of nearly 10 grams of methamphetamine and the manner in which the drug was divided *852 and packaged-seven packages with two commonly sold amounts-sufficed to permit a reasonable trier of fact to find that defendant intended to deliver.
Thus framed, the issue on appeal is whether 9.84 grams of methamphetamine, distributed into seven separate packages, with commonly sold amounts and at least five containing multiple uses, is sufficient to permit a reasonable factfinder to find that defendant possessed the methamphetamine with the intent to deliver. For the reasons that follow, we conclude that it is.
Oregon statute prohibits the delivery of methamphetamine. ORS 475.890. ORS 475.005(8) defines "delivery" to mean "the actual, constructive or attempted transfer * * * of a controlled substance[.]" A defendant attempts to transfer a controlled substance if a defendant intentionally engages in conduct that constitutes a substantial step toward transferring such a substance. See ORS 161.405(1).[2] "Possessing a controlled substance with the intent to transfer it may constitute a substantial step toward actually transferring it." State v. Alvarez-Garcia , 212 Or. App. 663, 666-67, 159 P.3d 357 (2007) (citing State v. Boyd , 92 Or. App. 51, 53-54, 756 P.2d 1276, rev. den. , 307 Or. 77, 763 P.2d 731 (1988) (holding that evidence was sufficient for conviction of delivery where the defendant possessed controlled substance and admitted having acquired the drugs to sell)).
In this case, there is no dispute that defendant possessed methamphetamine; the only dispute is whether there is sufficient evidence that he intended to transfer it. We have held that evidence is sufficient to support a conviction for delivery where it shows that the defendant possessed a *853 controlled substance in an amount inconsistent with personal use and possessed items associated with the delivery of a controlled substance, such as razor blades, scales, cash, or drug records. See, e.g., State v. Fulmer , 105 Or. App. 334, 336-37, 804 P.2d 515 (1991) (concluding that evidence of six bindles of cocaine in individual packages, a razor blade, and cash was sufficient); State v. Aguilar , 96 Or. App. 506, 508-10, 773 P.2d 17, rev. den. , 308 Or. 315, 779 P.2d 618 (1989) (concluding that evidence of 12 bags of methamphetamine, seven balloons of heroin, scales, a police scanner, razor blades, cash, and drug records was sufficient); cf. , State v. Miller , 196 Or. App. 354, 361-63, 103 P.3d 112 (2004), rev. den. , 338 Or. 488, 113 P.3d 434 (2005) (possession of an undisclosed quantity of drugs without evidence of materials commonly associated with delivery was insufficient to infer delivery).
Possession of materials commonly associated with delivery of controlled substances may support an inference that the *531 person possessing them intends to deliver those substances, but such materials are not always necessary to support an inference of intent to deliver. In Alvarez-Garcia , 212 Or. App. at 666-67, 159 P.3d 357, we rejected the defendant's argument that "paraphernalia of distribution" was necessary to establish intent to deliver. We determined that the absence of such paraphernalia was not dispositive and considered other circumstantial evidence of intent to deliver. Id. at 667, 159 P.3d 357.
In Alvarez-Garcia , as in this case, an Oregon State Trooper, who was a drug recognition expert, testified on common usage and possession amounts. He said that methamphetamine users generally do not carry enough for multiple uses with them and that carrying enough for 52 uses was very unusual. Id . at 665, 159 P.3d 357. We observed that "the methamphetamine was separated into two packages, one of which contained a typical user amount," and determined that separation or prepackaging was sufficient to support an inference that the defendant intended to transfer that package. Id . at 667, 159 P.3d 357. We concluded that a "factfinder could reasonably infer that defendant had put that amount into a separate package because he intended to transfer the other package. Although that inference is not required by the evidence, it is supported by the evidence." Id. (citation omitted).
*854 Defendant distinguishes Alvarez-Garcia from the present case by arguing that the defendant in that case had 13.2 grams in total, whereas, in this case, defendant possessed a smaller amount, 9.84 grams in total. Defendant argues that Alvarez-Garcia involved a quantity allowing 52 "uses," whereas defendant possessed only seven "user amounts," like a user who would keep a small supply, like a six-pack of beer. Defendant's argument is unpersuasive for two reasons.
First, on this evidence, the analogy to beer is inapt, and the comparison to a six-pack is misleading.[3] Mitts testified that an individual use ranges from 0.10 grams to 0.5 grams. Given that evidence, defendant possessed enough methamphetamine for no fewer than 20 uses and as many 98 uses.[4] That controlled substance, that total weight, and that number of uses is significantly more than a six-pack of beer.
Second, in our case law, the total weight of methamphetamine is not the sole determinant. In Alvarez-Garcia, we observed that "[t]he evidence of delivery here is not only that defendant possessed 13.2 grams of methamphetamine, but also that the drug was divided into separate packages . Thus, defendant's conviction was not based on possession alone." 212 Or. App. at 668 n 2, 159 P.3d 357 (emphasis added). To be sure, weight was an important factor to consider; total weight indicated an amount that was inconsistent with personal use.[5] But, in addition, the division of methamphetamine into separate packages, so as to facilitate distribution, was also significant. In Alvarez-Garcia , one of the two packages contained a typical user amount. Taken together, we concluded that the weight and packaging supported an inference that defendant intended to deliver.
*855 In this case, defendant possessed a total of 9.84 grams of methamphetamine, separated into seven smaller packages containing two commonly sold quantities. As in Alvarez-Garcia , the absence of additional evidence commonly associated with the transfer of drugs is not dispositive. Sergeant Moore explained that tools for weighing and packaging the drug are commonly kept in a secure place rather than in a vehicle that is more public. As in Alvarez-Garcia , evidence indicated that the quantity was inconsistent with mere personal use. Deputy Clayburn testified that, in his experience, users are generally found with "like, one little baggie" with "a *532 couple granules of methamphetamine in it." Captain Mitts said that "users do not have ten grams on their person." Defendant possessed enough methamphetamine for 20 to 98 uses. As in Alvarez-Garcia , the drug was divided into common distribution amounts: five "teeners" and two "50-sack" bindles.
We are compelled to reach the same conclusion as in Alvarez-Garcia . Defendant's possession of 9.84 grams of methamphetamine, distributed into seven packages containing commonly sold quantities, is sufficient evidence to permit a factfinder to reasonably infer that defendant had intended to transfer one or more of those packages. "Although that inference is not required by the evidence, it is supported by the evidence." Id. at 667, 159 P.3d 357 (citing Miller , 196 Or. App. at 358, 103 P.3d 112 ("The inference need not inevitably follow from the established facts; rather, if the established facts support multiple reasonable inferences, the jury may decide which inference to draw.")). The trial court did not err in denying defendant's motion for judgment of acquittal.
Affirmed.

Moore concurred that dealers often do not carry "scales and packaging" materials in their vehicles during transportation, because it is safer for dealers to prepackage their product for sale before transporting it in a vehicle.

In State v. Alvarez-Garcia , 212 Or. App. 663, 666 n 1, 159 P.3d 357 (2007), we observed:
"ORS 161.405(1) provides that a 'person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime.' Although that statute is not directly applicable here, because an attempt to transfer a controlled substance constitutes delivery, rather than attempted delivery, it nevertheless provides the appropriate definition of 'attempt' for purposes of ORS 475.005(8). See State v. Boyd , 92 Or. App. 51, 53, 53 n. 1, 756 P.2d 1276, rev. den. , 307 Or. 77, 763 P.2d 731 (1988) (explaining that, because the statutes governing delivery of controlled substances do not define 'attempt' or 'attempted transfer,' the definition of 'attempt' in ORS 161.405(1) applies)."

Defendant relies on the statement by Clayburn who said, "Even a person that used a lot-I mean a lot-they'd maybe go through a teener a day. Maybe." Clayburn's reference to a common amount that a user might possess or buy at a time was not evidence that a "teener," 1.75 grams, is the amount of methamphetamine that an individual would consume or use at a time.

We calculated this as follows: 9.84/0.5=19.68. 9.84/0.1=98.4

The legislature has determined, for example, that when a person has been convicted of delivery and possessed 10 or more grams of a substance containing methamphetamine, that constitutes a "substantial quantity" that increases the seriousness of the crime. ORS 475.900(1)(a)(C).