388 October 9, 2024 No. 711

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RAYNOLD BARRY ANNER, JR.,
*Defendant-Appellant.*

Clackamas County Circuit Court
19CR76998; A179540

Heather Karabeika, Judge.

Submitted July 25, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Andrew D. Robinson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Kate E. Morrow, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction following a bench trial for one count of attempted delivery of methamphetamine (Count 1), one count of possession of methamphetamine (Count 3), one count of possession of cocaine (Count 4), two counts of identity theft (Counts 5 and 6), and one count of giving false information to a police officer (Count 10). The trial court also found defendant guilty of one count of giving false information to a peace officer in connection with a warrant (Count 11), which the court merged with the verdict for Count 10, which resulted in one conviction on those two counts. On appeal, defendant raises six assignments of error. First, defendant assigns error to the trial court's denial of his demurrer to the indictment for failing to properly allege a basis for joinder. Second, defendant assigns error to the trial court's denial of his demurrer to the indictment, arguing that the charge of giving false information to a police officer violates his constitutional right of free expression. Last, defendant assigns error to the trial court's denial of his motions for a judgment of acquittal (MJOAs) on Counts 1, 3, 4, and 5. For the following reasons, we conclude that the trial court did not err and, therefore, affirm the judgment of conviction on all counts.

We briefly state the relevant facts, which are undisputed. A police officer pulled over defendant for driving an unregistered vehicle. Defendant told the officer that the vehicle belonged to his girlfriend. Defendant was the only individual in the vehicle. The officer noticed a blue drawstring bag behind the driver's seat with a Ziploc bag sticking out of the top. The officer asked defendant whether the bag contained marijuana, to which the defendant replied that it did not. In response to the officer's request for identification, defendant presented a false identification document. After the officer checked the driver's license and questioned defendant about discrepancies, defendant revealed to the officer his real name and the existence of an outstanding warrant for his arrest. The officer arrested defendant. The blue drawstring bag contained a Ziploc bag with 20.78 grams of methamphetamine, a Ziploc bag with 0.39 grams of cocaine, several other small, empty Ziploc bags, several checks, and

a scale. The arresting officer testified that, based on the officer's training and experience, a user amount of methamphetamine is between 0.2 to 0.5 grams.

The indictment charged defendant with 11 separate offenses, all charged as occurring on or about the same day, November 24, 2019. The indictment included a statement that the offenses are "alleged as being of the same or similar character, based on the same act or transaction, and/or based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, unless specifically alleged otherwise." Before trial, defendant filed two demurrers. In the first, defendant demurred against the indictment for insufficient basis for joinder of the charges. In the second, defendant demurred against the charge under ORS 162.385(1)(b) (Count 11) for giving false information to a police officer in connection with a warrant, arguing that the statute violated his constitutional free speech protections. At the later bench trial, defendant filed MJOAs on Counts 1 through 9. The court denied defendant's demurrers and his MJOAs.

In his first assignment of error, defendant argues that the trial court erred in denying his demurrer to the indictment for not properly alleging a basis for joinder. The indictment alleged the bases for joinder by essentially quoting the text of the joinder statute, ORS 132.560. Defendant contends that the state's boilerplate-joinder allegation in the indictment was insufficient to satisfy the requirements of ORS 132.560, because the allegation did not specify which basis for joinder applied. The state argues that the indictment in this case was sufficient, because on its face it provided notice of the reason for joining offenses in the same charging instrument. We agree with the state that the indictment was sufficient and therefore reject defendant's first assignment of error.

"[W]e review a trial court's determination that the state met the statutory requirements for joinder of charges for legal error." *State v. Thompson*, 328 Or 248, 257, 971 P2d 879, *cert den*, 527 US 1042 (1999). The joinder statute allows charging two or more offenses in the same charging instrument in a separate count for each offense if the offenses

charged are alleged to have been committed by the same person(s) and are of the same or similar character, based on the same act or transaction, or based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. ORS 132.560(1)(b). The state is "required to allege in the charging instrument the basis for the joinder of the crimes that are charged in it, whether by alleging the basis for joinder in the language of the joinder statute or by alleging facts sufficient to establish compliance with the joinder statute." *State v. Poston*, 277 Or App 137, 144-45, 370 P3d 904 (2016), *adh'd to on recons*, 285 Or App 750, 399 P3d 488, *rev den*, 361 Or 886 (2017); *see also State v. Warren*, 364 Or 105, 120, 430 P3d 1036 (2018) (stating that alleging the basis for joinder is not difficult and that using the language of the joinder statute generally is sufficient).

The indictment satisfies the requirement articulated in *Poston* because it alleged a statutory basis for joinder and it further alleged facts sufficient to establish compliance with the joinder statute. First, the indictment contains an express statement alleging the basis for joinder using the language of the joinder statute. Second, the indictment alleged that all 11 counts occurred on or about the same day, November 24, 2019, indicating that they were based on the same act or transaction. *See State v. Fitzgerald*, 267 Or 266, 273, 516 P2d 1280 (1973) (stating that "two charges arise out of the same act or transaction if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge"). In this case, the language in the indictment was sufficient for the purposes of ORS 132.560. The trial court did not err in denying defendant's demurrer.

In his second assignment of error, defendant challenges the trial court's denial of his demurrer, arguing that ORS 162.385(1)(b) (criminalizing giving false information to a peace officer in connection with a warrant) violates Article I, section 8, of the Oregon Constitution's protection of free expression.

We review the question whether ORS.162.385(1)(b) violates Article I, section 8, of the Oregon Constitution for legal error. *State v. Cook*, 334 Or App 437, 438, ___ P3d

___ (2024). Article I, section 8, of the Oregon Constitution provides that "[n]o law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever * * *." In *State v. Robertson*, the Supreme Court established an analytical framework for evaluating a law's constitutionality under Article I, section 8. 293 Or 402, 649 P2d 569 (1982). A law that targets speech based on its substance falls into "category one" of the framework, and is unconstitutional unless it falls wholly within a historical exception. *State ex rel Rosenblum v. Living Essentials, LLC*, 371 Or 23, 45, 529 P3d 939 (2023).

The parties both contend that ORS 162.385(1)(b) falls within category one of the *Robertson* framework, that is, that the statute targets speech based on its substance. We agree. Thus, the law is unconstitutional unless it falls wholly within a historical exception. *Living Essentials*, 371 Or at 45.

In *Robertson*, the Supreme Court recognized fraud as a well-established historical exception. 293 Or at 412 (listing fraud as one example of a well-established historical exception). The historical understanding of fraud includes not only culpable speech, but also misrepresentations thought to affect the public interest. *Living Essentials*, 371 Or at 49. Citing Blackstone's *Commentaries*, the court also recognized that misrepresenting one's identity before a public official was a felony under English law. *State v. Moyer*, 348 Or 220, 234, 230 P3d 7, *cert den*, 562 US 895 (2010) (noting "Blackstone's observations that providing false identifying information to governmental officials or public bodies were sanctionable offenses" (citing William Blackstone, 4 *Commentaries on the Laws of England* *41-42 (1769))). As a result, the court concluded that it was "unlikely that the framers of the United States Constitution or Oregon Constitution considered that kind of false communication a form of constitutionally protected expression." *Moyer*, 348 Or at 234. The court also concluded that the elements of a modern statute need not be "identical or matched perfectly with historical prohibitions to fall within a historical exception" where the statute is "an extension or modern variant of

the initial principle that underlies the historic legal prohibition against deceptive or misleading expression." *Id.* at 237.

ORS 162.385(1)(b) prohibits a person from knowingly giving false identifying information to a peace officer when there is an outstanding warrant for the person's arrest. The prohibitions of ORS 162.385(1)(b) fall within the same principle that underlies the historical prohibition against misrepresenting one's identity before a public official that existed at the time the Oregon Constitution was adopted. Therefore, we conclude that ORS 162.385(1)(b) falls within a historical exception to constitutionally protected expression and does not violate Article I, section 8, of the Oregon Constitution. The trial court did not err in denying defendant's demurrer.

In assignments of error three through six, defendant argues that the trial court erred in denying his MJOAs, because the evidence was legally insufficient to prove the crimes of attempted delivery of methamphetamine (Count 1), possession of methamphetamine (Count 3), possession of cocaine (Count 4), and identity theft of victim B (Count 5).

We review questions of the sufficiency of evidence in a criminal case following a conviction by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). Each of the counts above required proof that defendant possessed the drawstring bag's contents, which can be established through either actual or constructive possession. *State v. Tacia*, 330 Or App 425, 431, 543 P3d 713 (2024). To establish constructive possession, "the state must show that the defendant exercised control over or had the right to control the substance." *Id.* Mere proximity is not a sufficient basis from which to draw an inference of constructive possession. *Id.* For attempted delivery of a controlled substance, the state must show not only that the defendant possessed a controlled substance, but also that he had the intent to transfer it. *State v. Newsted*, 297 Or App 848, 852, 444 P3d 527, *rev den*, 365 Or 557 (2019). Intent to

transfer may be inferred where the defendant possesses a controlled substance in an amount inconsistent with personal use and possesses items associated with the delivery of a controlled substance. *Id.* at 852-53.

On the issue of possession, defendant contends that his mere proximity to the bag containing the controlled substances and checks was not a sufficient basis to establish constructive possession. We agree that defendant's mere proximity to the bag would not be sufficient itself to establish constructive possession. But his statement that the bag did not contain marijuana gave rise to a reasonable inference that defendant knew the contents of the bag. Defendant was also the only person in the vehicle at the time, and there was evidence that he was aware of the bag's presence behind his seat. Taken together, and viewed in the light most favorable to the state, those facts are sufficient for a rational factfinder to find that defendant had either exercised control over or had a right to control the blue drawstring bag, which would be enough to establish constructive possession over the bag and its contents. *See State v. Fry*, 191 Or App 90, 94, 80 P3d 506 (2003) (stating that a defendant's own statements can provide a link between the defendant's proximity to an item and constructive possession over it); *State v. Garcia*, 120 Or App 485, 488, 852 P2d 946 (1993) (concluding that there was sufficient evidence of constructive possession to survive an MJOA where drugs were found hidden in an apartment where defendant was staying and he admitted to having handled them). Thus, on this record there was sufficient evidence for the trial court, acting as factfinder, to have found that defendant constructively possessed the bag's contents, namely the methamphetamine, cocaine, and the check at issue in the identity-theft charge for victim B.

On the issue of the inchoate crime of attempted delivery of methamphetamine, defendant asserts that "it was entirely plausible that defendant possessed" the scale and packaging materials "for his personal use." Although personal use might be plausible, the facts, when viewed in the light most favorable to the state, were sufficient for a reasonable factfinder to find that defendant had the intent to transfer methamphetamine. Based on the officer's

testimony and experience that a personal use is between 0.2 and 0.5 grams, a reasonable factfinder could find that defendant's possession of 20.78 grams of methamphetamine is an amount inconsistent with personal use. *See also Newsted*, 297 Or App at 854 (witness testified that an individual use of methamphetamine ranges from 0.1 to 0.5 grams). Defendant also possessed plastic baggies and a scale, which are items that can be associated with the delivery of a controlled substance. We therefore conclude that there was sufficient evidence for the trial court, acting as factfinder, to have found that defendant attempted to deliver methamphetamine. The trial court did not err in denying defendant's MJOAs.

For the reasons discussed above, we reject defendant's assignments of error.

Affirmed.